## FRANK MATULA ET AL. v. JOHN LANE.

### Decided January 20, 1900.

**1. Fraud Against Creditors—Evidence.**

Where the issue is as to a fraudulent and merely simulated conveyance of his property by a debtor to defeat his creditors, evidence of other transactions and conveyances by him, and to and by his wife, is admissible where tending to show or disprove the fraud. See the opinion.

**2. Same—Pleading Not Required,When.**

While a party who relies upon fraud as a matter of avoidance must plead it, yet a defendant is not required to anticipate evidence not disclosed by the pleading of his opponent, and under only a general denial may show that notes offered in evidence by the other party were executed in furtherance of a fraudulent design.

**3. Special Verdict—Court Finding Other Facts.**

Where there is a special verdict, finding certain facts, the court has the right to find such other facts as are necessary to a judgment. Rev. Stats., art. 1331.

**4. Fraud—Simulated Debt—Charge.**

Upon an issue as to fraud by a defendant against creditors and of a simulated debt to his mother, the court properly charged that certain notes in evidence, given by him to the mother, would be prima facie proof of the existence of the debt only in case they were shown to have been delivered to, owned, and controlled by her, and otherwise would not be such prima facie evidence, but could be considered in connection with other circumstances of the case.

**5. Trespass to Try Title—Legal Title in Trustee.**

Plaintiff in trespass to try title, under an allegation that the fee simple title was in himself, may give in evidence a deed vesting the legal title in him as trustee.

**6. Judgment Liens Attaching Simultaneously.**

The liens of judgments recorded at different dates attach simultaneously to land thereafter acquired by the defendant and the proceeds of the land must be prorated among them according to their respective amounts. Rev. Stats., art 3289.

**7. Judgment Lien—Priority Denied.**

The rule that where liens are of equal dignity, and the owner of one of them unearths property fraudulently transferred by the defendant, he is entitled by reason of his diligence to have his lien first satisfied, does not apply where the ostensible legal title of land has remained in the defendant, though he has attempted to make a disposition of it.

**8. Title—Holder May Strengthen by Purchase.**

There is no rule forbidding a party with defective title or with no title from purchasing a good one, even though he had formerly sought to establish a fraudulent one.

APPEAL from Fayette. Tried below before Hon. H. TEICHMULLER.

*Patton & Ellis* and *Robson & Duncan,* for appellants.

*Brown, Lane & Garwood,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was instituted by John Lane, the appellee, against John Matula in trespass to try title to recover an undivided one-seventh interest in the property in controversy in this suit and for damages, and against Frank, Joe, and George Matula, Mrs. Mamie Haijek and her husband, Mrs. Johanna Holub and her husband, and Mrs. Anna Ademcek and her husband, alleging that they were joint

owners of the remaining six-sevenths of the property and praying for partition as against them.

John Matula filed no answer. The other defendants answered denying the allegations of plaintiff, and further alleging that the property in controversy belonged to their mother, Mrs. Anna Matula, at the date of her death. That she died intestate. That at said date their brother and codefendant, John Matula, was insolvent, and was indebted to their mother's estate in a sum largely in excess of his share therein, and recognizing the fact, and the heirs being all adults, and there being no necessity for administration, John Matula agreed with the other heirs to relinquish, and did relinquish, to them his interest in said estate, and agreed to pay to the heirs $290 in addition thereto, in discharge of such indebtedness. That by reason of such agreement and relinquishment they became the owners of the one-seventh interest of said John Matula in the property in controversy, and the said John Matula delivered possession to them on the 30th day of December, 1894, since which time they have been in possession of same, using the same, collecting rents and paying the taxes thereon. That at the time appellee Lane purchased the alleged interest of John Matula at execution sale, he had notice of their ownership and claim and that John Matula had no interest therein.

On May 1, 1899, the defendants, except John Matula, filed a supplemental answer in which they alleged that on the day of —————, 1894, Carson, Sewall & Co. recovered a judgment against John Matula for $264 and costs. That the same was duly abstracted and recorded according to law, and became and was a lien on all the real estate in Fayette County belonging to John Matula, including the property in question, if he had any interest therein. That in June, 1898, execution having been issued on said judgment, a levy was made upon the interest of John Matula in this property, which interest these defendants, through their agent and codefendant, purchased at the execution sale made in pursuance of such levy, whereby they became the owners of whatever interest he had therein. That the judgment lien under which they bought was superior to any interest acquired by appellee.

In May, 1899, appellee filed supplemental petition denying specifically the allegations in defendant's answer and supplemental answer, and averring the invalidity of their claim under said judgment. This was followed by an allegation that appellee's claim was based upon a sheriff's deed made in pursuance of three execution sales: (1) Under an execution issued upon a judgment in favor of Leopold Weiss against John Matula for $1255, dated April 17, 1894; (2) one in favor of W. T. Haydock against John Matula, dated November 17, 1892, for $1094; (3) one in favor of Simmons Hardware Company against John Matula, dated April 27, 1892, for $356.04. That the latter was duly abstracted and recorded January 13, 1893, and prior to the record of the Carson, Sewall & Co. judgment. That his purchase thereunder gave him title

as against any claim of defendants under the Carson, Sewall & Co. judgment.

Appellee further alleged that Frank Matula bought under said last named judgment, well knowing the superiority of his claim, but prayed that should it be held that defendants' claim was superior to his, he be allowed to redeem by repayment to them of their purchase money with legal interest. Appellee further alleged that the execution was issued and levy and sale made under the Carson, Sewall & Co. judgment not for the purpose of collecting the judgment for Carson, Sewall & Co., but by procurement of defendants and their attorneys for the purposes of perfecting title in Frank Matula, or in himself and his codefendants. The prayer was for judgment against defendants for the one-seventh interest sued for, and against John Matula for rents from June, 1895, until date, for partition, and for general relief. The above is, in substance, the pleadings of the parties.

Upon trial by jury the court, by agreement, submitted to the jury only the question whether John Matula, at the death of his mother, Mrs. Anna Matula, was indebted to her in an amount equal to or in excess of his one-seventh interest in the estate. The jury found upon this special issue that he was not so indebted, and having found the other facts from the evidence which he deemed necessary to a final judgment, the court rendered judgment in favor of the appellee for the interest in the land as sued for, and against all the appellants for $223.75 for rents. Appellants perfected this appeal, and have assigned numerous errors.

The three execution sales and the purchase of plaintiff Lane thereunder, as alleged, were established, and their regularity is not questioned. Under these sales the sheriff executed to the plaintiff a deed in the usual form of sheriff's deeds, except it recited as its basis the sale under each of the three executions, and conveyed to plaintiff the land in question in trust and for the use of plaintiff in each of said judgments. Upon this instrument plaintiff relied to establish his right, *prima facie*, to recover.

The seven named defendants were the children of Mrs. Anna Matula, who died intestate on the 6th day of October, 1894. There was no administration of her estate. The land in question was conveyed to her on November 11, 1893, by Mary A. Upton, the widow of ——— Upton, and the title was in Mrs. Matula at the time of her death. The property consisted of a business house and lot in the town of Schulenburg, in Fayette County, being the same in which Upton did business during the lifetime of Upton. John Matula was the junior member of this firm.

The judgment in favor of the Simmons Hardware Company against John Matula was duly abstracted and recorded in said county prior to the death of Mrs. Anna Matula, and the lien attached to the interest of her son John in her real estate at the date of her death. John Matula was entitled, as one of the seven heirs of his mother, to a one-seventh interest in her estate, and therefore in the property in question, unless

such interest was extinguished by indebtedness on his part to such estate at the date of her death. John Matula was insolvent at the date of the death of his mother, and then and at the date of the trial was largely indebted to many creditors. Shortly after her death the heirs, being all adults, met and agreed that the estate should be divided and settled without administration. At this meeting it was agreed that John Matula was indebted to his mother's estate in excess of any interest he might inherit therein, and in liquidation of his alleged indebtedness he relinquished to the other heirs his interest in the estate and promised, in addition, to pay them $290. At such meeting the indebtedness, in smaller amounts, of certain other heirs was taken into consideration and adjusted. This agreement and the relinquishment by John Matula of his interest in the estate was not evidenced by any written instrument, as far as the record shows, and the apparent legal title to a one-seventh interest in the real estate in question remained in John Matula as one of the heirs.

The answering defendants relied upon this settlement to show title in themselves to the entire property, and thereby to defeat the claim of plaintiff to any part thereof. In support of these averments defendants introduced their notes, signed by John Matula, payable to his mother, Mrs. Anna Matula, one for $529.29, dated November 13, 1891, one for $1163.98, dated November 26, 1890, and one for $3683, dated January 15, 1890. In this last note a lien was given upon the stock of goods of John Matula. These notes were not set out or referred to in any of the pleadings. Frank Matula and other defendants testified that in the family settlement John Matula was held to be due the estate about $4370. The smaller indebtedness of the other heirs was also stated. That the estate consisted of this debt and the storehouse and lot in question, upon which was due $295. The debts from other heirs and other persons amounted to $3299. The property in controversy was shown to be of the value of about $3500, upon which John Matula claimed to have paid $3200, and this credit was allowed him in the settlement. The estate was also shown to own sixty acres of land subsequently sold to John Matula for $300. Frank Matula further testified that John Matula mainly attended to his mother's business.

In 1887 John Matula was a member of the firm of Upton & Matula, doing business in the house in question. Upton died in that year, and thereafter John Matula, as surviving partner, scaled the firm's indebtedness 25 per cent, but it is not shown whether he paid the 75 per cent agreed on. The note for $3683 was claimed to have been given his mother by John Matula as a result of the scaling of his indebtedness, he then being indebted to her, but that $900 was for money that he had collected for her as her agent. The note recited that it was for value received in cash to buy out the firm of Upton & Matula, and the other cash collected on Anna Matula's notes. It was agreed in this note that this amount had been used by said firm to supply them with goods, and it recited a lien as before stated. None of these notes were ever shown to be in the possession of Mrs Anna Matula, though one of the de-

fendants testified that he saw her at his house about the time of the
date of this last named note, with some notes in her hand signed by
John Matula. None of the defendants claimed ever to have seen their
mother pay John any money or lend him any, or to have seen John de-
liver to her any notes.

December 2, 1891, John Matula failed in business, and made a deed
of trust preferring certain creditors, by which he delivered to his trus-
tee, Frank Lidiak, his merchandise, store fixtures, books and accounts,
to be sold for the payment of the debts named. Small claims were first
preferred to the amount of $447. Next came his mother, who was pre-
ferred for the three notes in question. Next was preferred Frank Ma-
tula for $1450. Then Geo. Matula for $150. Then his brother-in-law,
Haijek, for $200. When John went to his lawyer to prepare and exe-
cute this deed of trust, Frank Matula went with him. John then had the
notes with him, and brought them back with him. Frank Matula never
saw them from that date until after his mother's death in 1894. John
then had them in his safe. They showed no credits.

Frank Lidiak, the trustee, conducted the trust sale for about thirty
days, during which time he took in $3200 cash, and he then turned
cash and goods back to John Matula. Frank was paid the debt for which
he was preferred. It is not shown whether any other debts were paid or
not.

The plaintiff, to defeat this claim, sought to show, under his general
denial of defendants' answer setting up the existence of such indebted-
ness on the part of John Matula to his mother's estate, that no such in-
debtedness existed, and that John Matula had simulated such indebted-
ness to defraud his creditors, and that notwithstanding such settlement
and oral relinquishment of his claim to any part of the estate, he still,
with the consent of the other heirs, actually held and enjoyed his pro
rata share of such property. In support of this contention plaintiff ad-
duced the following facts (in addition to those disclosed by defendants'
proof), which are necessary to be set out in order to a clear disposition
of the many assignments of error assailing the action of the trial court
in admitting the proof.

(1) Deed to one Hughes, executed in the fall of 1898, conveying sixty
acres of land, part of the Bartlett league, and belonging to his mother
at the date of her death. The consideration was $600, and it recited
the fact that he sold as agent of the heirs of Andreas Matula, the father
of all the heirs herein mentiond. Frank Matula had testified that the
other heirs had sold this land to John Matula for $300, but no deed was
produced. This evidence was objected to on the ground that it was
misleading and immaterial, and that the acts of John Matula were not
admissible against his codefendants, and its admission is assigned as
error. We think it admissible, in view of the relation of the property to
his mother's estate, as tending to contradict the assertion that he had
disposed of his interest in the estate, and was relevant also to the issue
as to the existence of the indebtedness.

(2) Plaintiff introduced, over objection of defendants, a deed from John Matula to his wife, Paulina Matula, dated January 2, 1886, conveying to her 159 acres of land in Fayette County, Texas, consideration $900, recited to have been received from his father's estate, and the assumption by her of certain vendor's lien notes. It was shown by other evidence that John Matula paid over $3000 for this land.

(3) The court admitted, over objection of defendants, deed from Riley and wife, dated September, 1891, which deed conveyed —— acres of land to Mrs. Paulina Matula for the consideration of $3200, of which $700 was cash, and two notes for $1250 each.

(4) Deed from John and Paulina Matula his wife to one Kristek, dated fall of 1898, for consideration of $2100, conveying land as the separate property of his wife.

(5) The probate records of the estate of A. Janda, deceased, the father of Mrs. John Matula, were adduced for the purpose of showing that she had inherited therefrom only $800, which she received on October 6, 1885. There was no evidence showing that she had ever inherited any other property from any source.

(6) Plaintiff introduced a deed from William Hillman and wife to John Matula, dated November 2, 1883, conveying land in Fayette County, consideration $500 cash, note for $1000, due December 25, 1884. Also deed from same parties, November 2, 1883, conveying sixty-five acres of land in Fayette County and a two-sevenths interest in a twenty-five acres tract. The land embraced in these two conveyances is the same conveyed by John Matula to his wife in 1886, the year before the scaling of the indebtedness and first insolvency.

(7) Plaintiff also offered in evidence, over the objection of defendants, deed of John Matula to one Palma, November 29, 1891, conveying him certain land in Schulenberg, the consideration being $400 cash; and proof of the facts that such sale had since been attacked for fraud in a suit in which John Matula was party defendant, and that judgment was suffered without contest.

J. C. Brown was permitted to testify concerning deed from Brown to the wife of Matula in 1895, in procuring which he stated that John Matula first required the deed to recite that it was bought with money inherited by his wife from her father's estate. Afterwards he had inserted, "to be paid for out of rents of property inherited from her father."

All this evidence was excepted to by defendants, and the question of its admissibility is presented by appropriate assignments of error, the grounds of objection being, (1) that it is not material to any issue in the case; (2) that the acts and declarations of John Matula in the absence of the other defendants could not bind them; (3) that the sole issue in the case was whether John Matula was indebted to his mother at the date of her death.

In disposing of these questions we necessarily dispose of the question as to whether, under the pleadings, any evidence tending to establish fraud is admissible. It will be remembered that defendants, except

John Matula, pleaded the existence of debts to their mother and the settlement with John Matula. The notes were not set out, and the nature of the transaction not disclosed. Plaintiff simply denied the existence of any such facts.

We understand the general rule to be that the party who relies upon fraud as a matter of avoidance must plead it, but we are also of the opinion that a defendant is not required to anticipate evidence not disclosed by the pleading of his opponent, and under his denial may properly meet and overthrow a fact asserted, in any way within his power. When the facts in support of defendants' title were offered, plaintiff was properly permitted to show their nonexistence or invalidity. Linn v. Wright, 18 Texas, 340. This he sought to do by showing systematic preparation on the part of John Matula, for some years prior to his failure, to place his property beyond the reach of his creditors. For this purpose it was not only admissible to show the acts of John Matula looking towards his failure, and his efforts to evade his creditors thereafter, but the fact that these notes, having played a partial part in his first failure and a prominent part in his last, were contemporaneous in their existence with nearly every act sought to be shown by the evidence adduced. It will be borne in mind also that John Matula was a party to this suit, notwithstanding his failure to answer. Title was asserted to be in him until the sale to plaintiff. Some of the evidence tended to show that he was still enjoying that interest in the property, notwithstanding the alleged relinquishment to the estate. Other facts were shown with reference to the financial condition of the mother which rendered it extremely improbable that she could have possibly had such a sum to lend. She is shown to have been familiar with her son's affairs, and to have had notice of the extraordinary features of his last failure, and yet no witness is able to say that she ever made an effort to collect these notes due her by an insolvent, though secured at one time by a preference ample to discharge them. Indeed the evidence leaves it in grave doubt as to whether she ever took the trouble to reduce these notes to possession. If it is true that she left them in his possession, his acts with reference to them are admissible to show whether they have been extinguished. Their existence, as demands made valid by delivery, and the other issue, being also in the case, the broadest latitude of investigation is permitted, and the slightest circumstance tending to disclose the real facts is admissible.

In Sonnenthiel v. Trust Company, 10 Texas Civil Appeals, 274, it is held that it is not necessary for the other parties to have known of each of the facts relied on to prove the fraud or conspiracy. Such facts are proper to be considered in determining the existence of such fraud. Facts of this nature occurring both before and after the fact were admissible.

This case before us is in one respect a contest between plaintiff and the estate of Mrs. Anna Matula as to the validity of these notes, and her acts and silence in connection with the deed of trust sufficiently connect

her with the fraudulent purpose of John Matula as to the use of these notes to render his acts in preparation for his failure admissible against her estate.

As to the latitude allowed in establishing the issue of fraud and circumstances properly admitted, see also Cox v. Trent, 1 Texas Civil Appeals, 639. The reasons just given also dispose of the assignments assailing the admission of the declarations of John Matula as to his occupancy of the property after its rental. None of these assignments can be sustained.

The complaint that the court erred in finding any disputed facts after verdict is not well taken. The judgment recites that it was agreed that only the one issue should be submitted to the jury. No special charge was requested. This being a special verdict, the law, in the absence of the agreement, clothed the court with the right to find such other facts as were necessary to a judgment. Rev. Stats., art. 1331.

We are of opinion that the evidence supports the verdict of the jury that no such debt existed in favor of the estate against John Matula.

Concerning the objection to the charge of the court, to the effect that the notes in evidence would be prima facie proof of the existence of the debt only in case they were shown by the evidence to have been delivered to and controlled by Mrs. Anna Matula, and unless so shown to have been in her possession, ownership and control would not be prima facie evidence, but could be considered in connection with the other circumstances of the case, it is sufficient to say that this charge was only upon the burden of proof, and was proper. It did not, as contended by defendants, make their right to recover depend both upon her possession, ownership, and control.

The court also put the converse of the proposition, making it devolve upon plaintiff to disprove their valid existence in case such delivery was shown. This disposes also of the thirteenth assignment of error, for the court clearly left it with the jury to determine from all the evidence in either event whether such indebtedness existed. The objection that the court restricted the jury to the inquiry whether such indebtedness was equal to or in excess of John Matula's interest in the estate, is not tenable, for the reason that there was no evidence that any less sum was due, if any, nor was there any evidence that any sums were due in any way except as evidenced by the notes in question. It was agreed to be submitted in this way. We are of opinion that the court correctly charged the jury that defendants should prove the debts by a preponderance of the evidence. This rendered necessary also the charge as to the ownership and possession of the notes making a prima facie case for defendants, which the plaintiff must overcome by preponderance of the evidence.

Appellants also complain of the admission of the sheriff's deed in support of plaintiff's allegation of ownership and right to sue. Their contention is that it discloses only the trusteeship of plaintiff, and does not support his allegation of fee simple title in himself It is not con-

tended that the legal title is not ordinarily in the trustee in such a deed, but that he should have disclosed the nature of his title  We do not think the position tenable, nor does the case of Moore v. City of Waco, cited by appellants, decide the question.

In view of the disposition of this appeal many of the additional findings of the trial court become of small importance, and it is unnecessary to say whether they were all legitimately deducible from the evidence.

Since we have held that plaintiff has shown the right to recover, the question arises as to the effect of defendant's purchase under the execution sale under the Carson, Sewall & Co. judgment. This judgment was also abstracted and recorded prior to the death of Mrs. Anna Matula, and so is of equal dignity with the lien under which plaintiff claims. Under the rule, then, as announced in Willis v. Downes, 46 Southwestern Reporter, 920, each purchaser would be entitled to an interest in the property equal to the proportion which the amount of his lien bears to the opposing lien. As to the extent of plaintiff's interest under his three purchases, we think it clear that his rights, as against defendants holding under the Carson, Sewall & Co. lien, depend upon the Simmons Hardware Company lien, unaffected by his purchases under the other two judgments which were unsecured by any lien. Whatever equities arise under the sheriff's deed to plaintiff, as between the respective owners of those three judgments, can neither affect nor be affected by the rights of these defendants. Plaintiff would then be entitled to recover 428/772 of the undivided one-seventh interest of John Matula in the property in question, and defendants, except John Matula, would be entitled to the remainder. *This,* unless the contention of appellee be correct that the bringing of this suit has given him priority and therefore the entire title to the one-seventh. This contention is based on the proposition that where two judgment liens exist, of equal dignity, and the owner of one proceeds to unearth property, the ostensible legal title to which has been fraudulently placed in another and therefore out of reach of the liens, he is entitled by reason of his diligence to have his lien first satisfied. We will not prolong this already lengthy opinion by a discussion of the question thus presented. It is enough to say that in this case the ostensible legal title remained in John Matula as heir of his mother, no written conveyance having been made, and the rule, if correct, is not applicable.

Neither can the contention be upheld that because the court found that all the defendants had participated in the asserted fraud, and that the purchase by Frank Matula under this lien was for the benefit of John Matula, the rights under the purchase can not be set up by them to the detriment of plaintiff. If the verdict of the jury be correct the title remained in John Matula until the purchase by plaintiff, whose purchase was subject to the Carson, Sewall & Co. lien, which had then attached. While defendants' attorneys may have induced Carson, Sewall & Co. to levy and sell, the fact remains that they did so, and that defendants bought whatever rights Carson, Sewall & Co. would have had.

They did a lawful thing, whatever their motive was, and whatever their former shortcomings. Plaintiff did not and could not buy the entire estate while the lien of Carson, Sewall & Co. existed. What remained to be sold John Matula himself could, perhaps, have bought unaffected by his prior fraud. We know of no rule forbidding a party with a defective title, or with no title, from purchasing a good one, even though they had formerly sought to establish a fraudulent one. This being true, it follows that the judgment in this respect must be reversed and rendered in accordance with the views indicated as to the amount of plaintiff's recovery. That is to say, plaintiff is entitled to recover 428/722 of John Matula's one-seventh interest in the property in controversy. Under his prayer for general relief, and because defendants have themselves shown that they have held adversely to plaintiff and have actually collected and appropriated the rents, plaintiff may recover against all the defendants a like proportion of the $223.75 rents found by the trial court to be due on such one-seventh interest.

For the errors indicated, the judgment will be reversed and here rendered in accordance with the views expressed in this opinion.

*Reversed and rendered.*

Writ of error refused.