Harry ENGLERT, Appellant,

v.

Edith ENGLERT, Appellee.

No. 07–93–0246–CV.

Court of Appeals of Texas, Amarillo.

July 18, 1994.

Forrest W. Wagner, Grand Prairie, for appellant.

Douglas R. Woodburn, Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

BOYD, Justice.

In this garnishment case, appellant Harry Englert challenges the judgment of the trial court finding him liable to appellee Edith Englert, the garnisher in the action. For the following reasons, we reverse the judgment of the trial court and render judgment in favor of appellant.

The relevant facts are undisputed. In 1985, Richard Englert conveyed his interest in a piece of real estate to appellant, his brother, in exchange for a promissory note. The note was to be paid in monthly installments of $858.98, with the first payment due on May 19, 1985, and the last payment due in 1995.

Appellee, Richard Englert's former wife, subsequently obtained a Tennessee judgment against Richard for delinquent child and spousal support and unreimbursed medical expenses. The judgment was registered in Texas and Richard was served with notice of the registry on June 29, 1992. On August 21, 1992, appellant paid Richard the balance of approximately $24,000 remaining on the note. Appellant made this last payment with the knowledge that appellee was going to attempt to garnish the indebtedness. Appellee served appellant with the writ of garnishment on September 3, 1992. In response, appellant asserted that he did not owe Richard any debts and did not possess any property belonging to Richard.

At the bench trial, appellee elicited testimony from appellant, over his attorney's objection, that he was aware of appellee's efforts to collect the indebtedness owed her by Richard prior to the time he paid the note and that he knew she might try to garnish the proceeds of the note. Overruling appel-

lant's objection that appellee had not pled that theory, the trial court rendered its judgment finding that appellant's prepayment of the note was a fraudulent conveyance and was ineffective as to appellee.

Although the principles underlying garnishment actions and fraudulent transfers are well established in the law of this state, the interrelationship of these concepts has received little attention from Texas courts in recent years. However, the majority rule in the United States is that, to the extent that an obligation has been discharged or property surrendered prior to garnishment, such property or obligation is not subject to the later garnishment. This is true even if such actions were taken to avoid garnishment. 38 C.J.S. *Garnishment* § 95 (1943 & Supp. 1993). That rule also applies where the payment of a debt is made before it is due. *Id.* There is, however, a recognized distinction between a payment by a potential garnishee merely for the purpose of avoiding garnishment and one made with the intent to defraud creditors. *Id.*

In those cases which have addressed the issue, Texas courts have followed the majority rule. Thus, from the earliest days of our jurisprudence, it has been recognized that a debtor has the right to prefer his obligation to one creditor over an obligation to another creditor. *Given v. Taylor, Hart & Co.*, 6 Tex. 315, 321 (1851). However, that right to prefer does not extend to transfers made in fraud of the rights of the other creditors. *Quinn v. Dupree*, 157 Tex. 441, 303 S.W.2d 769, 774 (1957). Even so, a fraudulent intent must be affirmatively shown and will not be presumed. *Higgs v. Amarillo Postal Employees Credit Union*, 358 S.W.2d 761, 763 (Tex.Civ.App.—Amarillo 1962, no writ). A garnishee's knowledge of the existence of other creditors of the debtor is not sufficient to show that an otherwise valid transfer was made with a fraudulent intent. *Provident Nat'l Bank of Waco v. Cairo Flour Co.*, 226 S.W. 499, 504 (Tex.Civ. App.—Austin 1920, no writ); *Armstrong Co. v. Elbert*, 14 Tex.Civ.App. 141, 36 S.W. 139, 140 (1896, no writ).

The ability of a garnisher to attack transactions between debtors and garnishees in a garnishment proceeding is also well established. *Hartman v. Hartman,* 135 Tex. 596, 138 S.W.2d 802, 803 (1940); *Owosso Carriage & Sleigh Co. v. McIntosh & Warren,* 107 Tex. 307, 179 S.W. 257, 259 (1915) (garnisher able to void transfer made in violation of bulk sales law); *Holloway Seed Co. v. City National Bank of Dallas,* 92 Tex. 187, 47 S.W. 95, 96 (1898); *Willis v. Yates,* 12 S.W. 232, 233 (Tex.1889); *Hunter v. Pitcock,* 346 S.W.2d 509, 511 (Tex.Civ.App.—Fort Worth 1961, no writ); *Cantwell v. Wilson,* 241 S.W.2d 366, 368 (Tex.Civ.App.—Austin 1951, no writ); *Harrisburg Nat'l Bank v. George C. Vaughan & Sons,* 204 S.W.2d 9, 12 (Tex. Civ.App.—Galveston 1947, writ dism'd); *Hobbs v. Downing,* 147 S.W.2d 284, 285–86 (Tex.Civ.App.—Amarillo 1941, no writ); *Houston Drug Co. v. Kirchhain,* 71 S.W. 608, 610 (Tex.Civ.App.1902, writ ref'd); *Armstrong Co.,* 36 S.W. at 139; 37 C.J.S. *Fraudulent Conveyances* § 310 (1943 & Supp.1993). We find no indication that the enactment of the Texas Uniform Fraudulent Transfer Act [1] alters these basic principles. It is in this context that we consider appellant's points of error.

■ In his first point, appellant challenges the trial court's failure to file findings of fact and conclusions of law. However, in response to an agreement between the parties, this court abated this appeal so that findings of fact and conclusions of law might be included in the record. A supplemental transcript containing the trial court's findings of fact and conclusions of law has now been made a part of the record on appeal. That being the case, appellant's first point need not be further addressed.

Appellant's second and fifth points are argued together. In his second point, appellant argues that the trial court erred in allowing testimony regarding any knowledge he had of the garnishment, prior to his being served with appellee's writ of garnishment, because the pleadings did not raise the issue of fraudulent transfer. Similarly, in his fifth point appellant asserts the trial court erred in finding that the transfer he made to Rich-

ard was fraudulent because, again, there were no pleadings raising that issue. Appellant relies, without specific reference, upon the principle set forth in Rule 301 of the Texas Rules of Civil Procedure that a judgment must conform to the pleadings in a case. *See also Mapco, Inc. v. Carter,* 817 S.W.2d 686, 688 (Tex.1991).

Appellee concedes that she did not plead fraudulent transfer; however, she cites authority for the proposition that "in a proper case, fraud need not be specially pleaded." As exemplars of instances in which the courts have held it was not necessary to specifically plead fraud, appellee cites the hoary cases of *Rutherford v. Carr,* 99 Tex. 101, 87 S.W. 815 (1905); *McSween v. Yett,* 60 Tex. 183 (1883); *Clardy v. Wilson,* 27 Tex. Civ.App. 49, 64 S.W. 489 (1901, writ ref'd); and *Matula v. Lane,* 22 Tex.Civ.App. 391, 55 S.W. 504 (1900, writ ref'd). Appellee additionally relies upon 17 Tex.Jur.3rd *Creditors' Rights and Remedies* § 595 (1982). Those authorities, however, are distinguishable.

The *McSween, Clardy,* and *Matula* cases concern the ability of a party to meet defenses not pled by his opponent but raised at trial. That type of situation is not present in this case. Parenthetically, the *McSween* case also involved a claim of fraud rather than fraudulent transfer. Matters involved in a cause of action for fraud are separate and distinct from those in an action for fraudulent transfer. *Nobles v. Marcus,* 533 S.W.2d 923, 925 (Tex.1976).

In the *Rutherford* case, the question presented to the court was whether a conveyance of real estate was made in fraud of creditors. The relevant statute in that case provided that a conveyance of real estate to defraud creditors was void as to such creditors. *Rutherford,* 87 S.W. at 815–16. The action in question was one of trespass to try title and the defendant had pled his chain of title to the property, including the deed charged to be fraudulent. *Id.* at 816. It was in this context that the Texas Supreme Court held that the plaintiff, without specifically pleading a cause of action of fraud, was entitled to introduce evidence of a conveyance in

1. Tex.Bus. & Com.Code Ann. §§ 24.001–.012    (Vernon 1987 & Supp.1994).

fraud of creditors to show that the deed in question was void and, thus, defeat the defendant's chain of title.

The provision in the Texas Jurisprudence encyclopedia that appellee relies upon is merely that publication's conclusion that, based on the above cases, "in an action of trespass to try title the defendant is permitted under a plea of 'not guilty' to give in evidence any lawful defense except the defense of limitations." The instant case, of course, does not involve such an action.

In support of her proposition that it is not necessary to specifically plead fraudulent transfer, appellee also places considerable reliance upon *Cantwell v. Wilson,* 241 S.W.2d 366 (Tex.Civ.App.—Austin 1951, no writ). In that case, a creditor garnished funds held by a bank in an account of the debtor's wife, alleging that the funds held in the wife's name were, in fact, "effects belonging to the community estate of Jim Cantwell (the debtor) and his wife, Lester Annie Cantwell, and [were] subject to the writ of garnishment applied for." *Id.* at 367. The appellate court upheld the lower court finding that the funds in question were, in fact, the property of the debtor. However, en route to its holding, the appellate court specifically noted that the debtor did not challenge the sufficiency of the creditor's application and affidavit for garnishment. *Id.* at 368. The question of the sufficiency of the pleading was not involved in the case and only by inference could be said to support appellee's position here. Additionally, the portion of the allegations in the garnishment application quoted above, in the absence of exception, would appear to be sufficient to give notice of a fraudulent conveyance claim.

Finally, even assuming arguendo that *Cantwell* supports appellee's contention that a specific pleading was not necessary, in *Nobles,* the court specifically held that a "[f]raudulent conveyance requires a technical pleading that relies on specific allegations, including one that alleges the transfer to have been a fraud against the rights of the creditors; *it is in addition to, and separate from,* an action for fraud." *Nobles,* 533 S.W.2d at 925. Absent pleading, appellant's objection prevented the issue of fraudulent

transfer from being tried by consent. *Harkey v. Texas Employers' Ins. Ass'n,* 146 Tex. 504, 208 S.W.2d 919, 922 (1948). Although no Texas court has specifically addressed the issue since the enactment of the Texas Uniform Fraudulent Transfers Act, we find nothing in the new statute that would alter the holding in *Nobles* or the provision of Rule 301 of the Texas Rules of Civil Procedure.

As there is no exception exempting garnishment actions from the general rule requiring judgments to be in conformity with pleadings, the trial court erred in rendering judgment based on the theory of fraudulent transfer. We must, therefore, sustain appellant's fifth point. As that sustention is dispositive of the appeal, there is no necessity for us to discuss the remainder of appellant's points. Inasmuch as appellee was precluded from recovering on a theory of fraudulent transfer and presented no evidence that appellant possessed any property of or owed any debt to Richard Englert at the time he was served with notice of the garnishment proceedings, we must, and do hereby, render judgment that appellee take nothing as against appellant. Tex.R.App.P. 81(c).