**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-10253

Geneva Corporate Finance, Inc. F/K/A
Geneva Business Services, Inc.,

Plaintiff-Appellee,

VERSUS

Clyde C. Waddell, Jr. Hester's Office Center, Inc.,
and Crone Oil Company, Inc.,

Defendants-Appellants.

Appeal from the United States District Court
For the Northern District of Texas, Lubbock Division
(5:98-CV-185-C)

March 7, 2001

Before POLITZ, SMITH, and PARKER, Circuit Judges.

PER CURIAM:[*]

This case involves a creditor's attempts to collect a judgment from corporate shareholders under article 2.21 of the Texas Business Corporations Act. Appellants Clyde Waddell and his two corporations, Hester's Officenter and Crone Oil Company, argue that

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

there is insufficient evidence in the record to support the jury's verdict holding the appellants liable for the debt that Officenter owed to Geneva Corporate Finance.

## I.

Clyde Waddell was the sole shareholder of Hester's Officenter and Crone Oil Company. Hester's Office Center was in turn the sole shareholder of Officenter, Inc., which sold office furniture and supplies. In order to supplement cash flow deficiencies, Plains National Bank loaned approximately $2.3 million to Hester's, which in turn loaned the full amount to Officenter. Plains National Bank filed security interests against Officenter's accounts receivable. Waddell and Crone Oil Company also executed loans to Officenter.

On March 22, 1994, Officenter sent an engagement letter to Geneva Corporate Finance, requesting that Geneva find a purchaser of Officenter's assets for a "success fee" based on the total sales price. After Geneva failed to locate a purchaser in the following two years, Officenter, with the help of a third party, contacted Sewco, Inc. On March 20, 1996, Sewco agreed to purchase all of Officenter's assets.

The day after the sale, Officenter transferred its employees, floor-planned inventory and trade receivables to its parent company Hester's.[1] The proceeds of the sale were paid through Hester's to

---

[1]"Floor-planned" inventory is owned by a finance company. The retailer may earn a profit if the merchandise is sold, but the retailer never receives title to the goods.

Plains National Bank and several vendors. For reasons not articulated in the record, Plains National Bank required Hester's to sign the notes as the parent company. Hester's also repaid Waddell $30,000, which he loaned to Officenter for a down payment to Geneva.

As Hester's continued to pay Officenter's debts, a dispute arose between Officenter and Geneva concerning Geneva's portion of the sale proceeds. Officenter claimed that it did not owe the entire fee to Geneva because Geneva failed to locate a purchaser. Officenter submitted a settlement offer, which Geneva rejected. The parties submitted their case to arbitration, and the arbitrator awarded Geneva $170,848.35 on November 9, 1996. By this time, all of the sale proceeds had been paid to Officenter's creditors.

Geneva reduced the arbitration award to a judgment against Officenter. Hester's continued to pay its debts to Plains National Bank, Waddell, and Crone Oil, but did not pay any part of Geneva's judgment against Officenter. In October of 1997, Waddell sold Hester's for $500,000.

Geneva filed suit in the United States District Court for the Northern District of Texas, Lubbock Division, seeking a judgment against Waddell, personally, as well as his two companies, Hester's and Crone Oil. Geneva asserted claims that Waddell, Hester's and Crone Oil were alter-egos of Officenter, that Waddell denuded assets from Officenter, and that the payments from Officenter to its creditors were fraudulent transfers. At the close of the

3

plaintiff's evidence, Waddell, Hester's and Crone Oil moved for judgment as a matter of law, which the district judge denied. The district judge instructed the jury on Geneva's alter-ego claim under article 2.21 of the Texas Business Corporations Act, but refused Geneva's proposed instruction concerning a common law cause of action for denuding corporate funds.

The jury rendered a verdict in favor of Geneva. Waddell, Hester's and Crone Oil renewed their motion for judgment as a matter of law, claiming that there was insufficient evidence to support a finding of liability based on the alter-ego theory under article 2.21. They also argued that the fraudulent transfer claim under § 24.006 of the Texas Business and Commerce Code was barred. In its response, Geneva stated that its sole theory of recovery was the article 2.21 alter-ego claim. The district judge denied the motion and entered its judgment against Waddell, Crone Oil and Hester's.

## II.

We assess the district court's denial of a motion for judgment as a matter of law de novo. *Ford v. Cimarron Ins. Co., Inc.*, 230 F.3d 828, 830 (5th Cir. 2000). "Judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, and 'there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue.'" *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th

4

Cir. 1997) (quoting FED. R. CIV. P. 50(a)). Geneva continues to deny that their case is governed by the Texas Uniform Fraudulent Transfer Act. *See* TEX. BUS. & COM. CODE ANN. § 24.006 (Vernon 1987 & Supp. 2000). Our review is therefore confined to Geneva's alter-ego claim under article 2.21 of the Texas Business Corporations Act.

A plaintiff seeking to pierce the corporate veil and hold a shareholder liable for a corporation's contractual obligations must demonstrate that the shareholder "caused the corporation to be used for the purpose of perpetuating and did perpetuate an actual fraud on the obligee primarily for the direct personal benefit of the [shareholder]." TEX. BUS. CORP. ACT ANN. art. 2.21 (Vernon Supp. 2000). There are several types of fraud, including fraudulent inducement, fraudulent concealment, and misrepresentation. *See Kajima Int'l, Inc. v. Formosa Plastics Corp.*, 15 S.W.3d 289, 292 (Tex. App.--Corpus Christi 2000). Although most courts have applied the elements of fraudulent misrepresentation to article 2.21 claims, the district court defined actual fraud in its instructions to the jury as "involving dishonesty of purpose or intent to deceive."[2] Absent timely objection or suggested alternative language, the jury is to be guided by the instruction as given. *See Thrift v. Hubbard*, 44 F.3d 348, 354 (5th Cir. 1995).

---

[2]*See Menetti v. Chavers*, 974 S.W.2d 168, 175 (Tex. App.--San Antonio 1998, no writ); *Harco Energy, Inc. v. The Re-Entry People, Inc.*, 23 S.W.3d 389, 397 (Tex. App.--Amarillo, 2000 n.w.h.).

Geneva claims that Waddell, Hester's, and Crone Oil intended to prevent Geneva from collecting its judgment by transferring Officenter's assets to Hester's, which in turn relinquished the remaining funds to creditors other than Geneva.[3] A debtor in Texas has the right to prefer an obligation to one creditor over an obligation to another creditor, as long as the debtor's preference is devoid of fraudulent intent. *See, e.g., Englert v. Englert*, 881 S.W.2d 517, 518 (Tex. App.--Amarillo 1994, no writ) (holding that intent to deceive creditors will not be inferred in fraudulent transfer cases). "[F]raudulent intent must be affirmatively shown and will not be presumed." *See id*.

We do not think the evidence supports a finding that Waddell, Crone Oil and Hester's intended to deceive or dishonestly deprived Geneva of its claim to the sale proceeds. There is no evidence in the record to suggest that Officenter raised its dispute over the amount of money owed to Geneva in bad faith. Officenter had no reason to postpone payments to its other creditors until the resolution of the contractual dispute with Geneva. By the time the arbitrator issued the award in favor of Geneva, the sales proceeds were depleted. The record shows that the remaining items Officenter transferred to Hester's were accounts receivable,

---

[3]We note that the judgment against Office Center directly related to Office Center's contract with Geneva for purposes of asserting an alter-ego claim under article 2.21. *See* TEX. BUS. CORP. ACT art. 2.21(A)(2).

6

secured by Plains National Bank, and floor-planned inventory, which Office Center did not own. All of the payments Officenter and Hester's tendered to Plains National Bank, Hester's, Waddell, and Crone Oil were payments for legitimate debts.

The record does not support a conclusion that Waddell used Officenter to perpetrate an actual fraud on Geneva. *See* TEX. BUS. CORP. ACT art. 2.21(A)(2). To the contrary, Officenter was simply going out of business. Because there is insufficient evidence to support a finding of actual fraud as defined by the district court, we reverse and render judgment in favor of Waddell, Hester's and Crone Oil.[4]

REVERSED and RENDERED

---

[4]We note that § 24.006 of the Texas Uniform Fraudulent Transfer Act allows a creditor to avoid transfers made to insiders for an antecedent debt if the debtor was insolvent at the time of the transfer and the insider had reason to believe the debtor was insolvent. *See* TEX. BUS. & COM. CODE ANN. §§ 24.006, 24.008 (Vernon 1987 & Supp. 2000). Because the district court did not instruct the jury as to a fraudulent transfer claim and Geneva consistently rejects this theory of recovery, we have no reason to review the evidence under the Uniform Fraudulent Transfer Act.

7