NO. 07-01-0191-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JULY 23, 2004

_____

STEVE W. STERQUELL, APPELLANT

V.

NEAL B. SCOTT, INDIVIDUALLY; NEAL B. SCOTT,
TRUSTEE OF THE ANDREA LYNN SCOTT TRUST; AND,
NUSARA KAENTONG, APPELLEES

_____

FROM THE 251ST DISTRICT COURT OF POTTER COUNTY;

NO. 83,731-C; HONORABLE PATRICK PIRTLE, JUDGE

_____

Before JOHNSON, C.J., REAVIS, J., and BOYD, S.J.[1]

**OPINION**

In this appeal, appellant Steve W. Sterquell (Sterquell) seeks reversal of a take-nothing judgment, rendered after a bench trial, in favor of appellee Neal B. Scott (Scott), individually and as trustee of the Andrea Lynn Scott Trust (the Trust). In two points of

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).

asserted error, Sterquell argues the trial court erred: 1) by failing to find as a matter of law that the lien created by an abstract of judgment was effective against any subsequent transfer of properties located in Potter County and/or any finding that Scott did not own the properties that are the subject of this appeal is against the great weight and preponderance of the evidence; and 2) by not finding the transfers from Scott to entities either directly or through sham foreclosures were fraudulent and made for the specific purpose of hindering creditors and/or any factual findings to the contrary are against the great weight and preponderance of the evidence. For reasons hereinafter stated, we affirm the judgment of the trial court.

On November 16, 1989, Sterquell filed suit against Scott seeking to recover the balance due on a note secured by lien on certain real estate not relevant to this appeal. On January 16, 1991, he recovered a judgment in the amount of $10,951.84. On January 29, 1991, he filed an abstract of that judgment in the Potter County Clerk's office. On June 24, 1997, Sterquell filed the suit giving rise to this appeal against Scott, individually and as trustee of the Trust, and Nusara Kaentong (Kaentong). In his first amended original petition, his action pleading, Sterquell alleged the abstract of judgment had created a lien on all property owned by Scott in Potter County at the time. He further alleged that Scott, in an attempt "to hide, transfer and conceal assets" had transferred many properties to the Trust and other entities, persons and insiders, "including without limitation" the properties identified as Exhibit C, which was a listing of deeds and transfers of various Potter County properties. Because of the number of the properties listed in Exhibit C, their actual legal description will be referred to only should it become necessary to a proper discussion of the

issues in this appeal.  At this point, suffice it to say, the conveyances referred to in the pleading and included as exhibits, each reciting a formal consideration, were made by Scott to the Trust on October 1, 1990, March 5, 1991, April 17, 1991, May 6, 1991, September 11, 1992, and January 21, 1993.   In his suit, Sterquell further alleged that the Trust and Kaentong purchased properties from Scott  "with notice of defendant transferor's [Scott's] intent to delay, hinder, and defraud" him and that the property was transferred for less than fair consideration.  In response to Sterquell's suit, Kaentong filed a general denial.

In Scott's response to the suit, in addition to a general denial, he asserted that prior to the date of the abstract of judgment, on August 7, 1990,  a purchase money lien existed securing a note in the original principal amount of $99,000 in favor of First American Title Insurance Company.  He further asserted that the note and the liens securing it were transferred to the Trust and, on September 2, 1997,  the Trust purchased the property at a non-judicial foreclosure sale, thereby cutting off any judgment lien.  However, the copies attached to the pleading show that the lien only covered the four tracts of property conveyed by Scott to the Trust on March 5, 1991.

The suit proceeded to a bench trial at which both Scott and Sterquell testified.  The only other witness was Mitch D. Carthel, whose testimony was limited to attorney fees.  The trial resulted in the judgment from which Sterquell brings this appeal.  As a result of Sterquell's request and a remand by this court for the purpose of obtaining these findings, the trial court entered its findings of fact and conclusions of law.  The findings of fact are:

1. On January 16, 1991, the Plaintiff, Steve W. Sterquell ("Sterquell"), obtained a judgment against the Defendant, Neal B. Scott ("Scott") in the amount of $10,951.84.

2. Sterquell filed an Abstract of Judgment on January 16, 1991, in Potter County, Texas.

3. Scott attempted to transfer various tracts of real property situated in Potter County, Texas to the Defendant, Neal B. Scott, Trustee of the Andrea Lynn Scott Trust ("Trust").

4. The Trust is not the alter ego of Scott, and does not constitute a sham entity.

5. Scott did not transfer property to the Trust with the intent to delay, hinder, and defraud Sterquell.

6. Scott did not transfer property to the Shapiro Family Limited Partnership with the intent to delay, hinder, and defraud Sterquell.

7. The properties transferred to the Trust were not transferred for less than fair and adequate consideration.

The trial court's conclusions of law were:

1. The Abstract of Judgment filed by Sterquell on January 16, 1991, created a judgment lien on any non-homestead real property located in Potter County, Texas, owned by Scott on or after that date.

2. Sterquell failed to meet his burden of proof of establishing that Scott owned any of the property in question on or after January 16, 1991.

3. Sterquell failed to meet his burden of proof regarding the establishment of a judgment lien.

4. Sterquell failed to meet his burden of proof regarding the allegation that Scott was insolvent at the time of any transfer in question.

5. Sterquell failed to meet his burden of proof regarding the claims made in this suit.

6. Sterquell is not entitled to foreclosure of his Judgment Lien.

4

7. Sterquell is not entitled to the recovery of monetary damages in this cause.

8. Sterquell is not entitled to the recovery of exemplary damages in this cause.

9. Sterquell is not entitled to the recovery of attorney's fees in this cause.

10. Sterquell is not entitled to the recovery of costs in this cause.

11. All costs of court should be assessed against Sterquell.

Because of the questions presented in the appeal, it is necessary to discuss in some detail the somewhat labyrinthine evidence produced at the trial of this matter. At the hearing, Sterquell initially presented deposition testimony of Scott. He presented the portion of the deposition in which Scott testified that at the time he lived in Amarillo, he was a speculator dealing in real estate. In the deposition, he averred that the Shapiro Family Limited Partnership (the Partnership) consisted of the Shapiro Family Limited Partnership and the Neal B. Scott Trust. The Dorothy Shapiro Estate,[2] he said, was a limited partner in the Partnership, as was the Neal B. Scott Trust. He also said that both of these entities were general partners in the Partnership. Scott said he did not know who the executor of Dorothy Shapiro's will was, but the Trust was the beneficiary of the will. He estimated that his mother had put "probably 98 percent" of her property prior to her death in the Partnership. He also said that while she was living, his mother was the general partner as well as a limited partner and, as trustee of the Trust, he also acted as both a general and limited partner. His present occupation, he said, was to oversee the Limited Partnership and "whatever interests."

---

[2]Dorothy Shapiro was his mother.

5

At the time the trust was created, Scott said he put $100 into it as well as his interest in the Limited Partnership, he did not know the time sequence, and "the attorneys handled it." He admitted that he had had some financial difficulties for some time and his mother as well as the attorneys who handled "this" were aware of those difficulties. He did not know of any additional assets that had been placed in the Trust since its inception. He did know that he was the principal beneficiary of the Trust. He was not employed at the time of the deposition and his only income was "reimbursements" for out of pocket expenses. He had no checking or savings accounts or credit cards. His reimbursement was paid by whichever entity he was "watching." He denied that he had any cash other than "for reimbursements or advances that I have to show receipts for." He admitted that as trustee he was the one who decides if advances would be made. He was the only one who was involved in the creation of the Trust. He denied that he knew all the assets that the Trust possessed, but "the accountants have a list."

Scott averred that Andrea Lynn Scott was the only one who receives cash distributions from the Trust "when there's –it's available." He admitted that he, as trustee, was the one responsible for making the determination of, and actually making the distribution from, the Trust. He said he owed the Partnership $800,000 as the result of a judgment against him that it bought. In making that purchase, he testified, his attorney, "[t]he Chicago attorneys, probably, and the bank in Chicago" participated. The decision to purchase, he said, was a "consensus" among the participants, which included his mother. He averred that she was "fully cognizant" of the deal and "was looking at it as a business deal." The judgment was purchased for $235,000. His mother thought she would make

6

money by "foreclosing on me and getting the shopping center" because "[t]hey purchased the security interest." The shopping center was foreclosed upon and ended up being owned by the Partnership.  It was still owned by the partnership at the time of the deposition. He did not know if the partnership would purchase any other judgments, but if a decision to purchase other judgments was made, it would be made by his attorney and his accountants.

At the time the deposition was first "noticed," Scott was in Paraguay looking at import/export deals in leather goods and real estate.  His expenses while there were paid by the Trust and the Limited Partnership.  He did not remember whether he had transferred any assets to the Trust, the Neal B. Scott Trust, or the Limited Partnership since 1991, but "[i]t would all be in the bookkeeping."

When queried about the property located at 1601 South Jackson Street in Amarillo, he said Kaentong was a friend of his and he sold the property to her in "[p]robably '96, '97." The property was owned by the Trust at the time and she had offered "hundred, twenty-five, hundred thousand, somewhere in that area," which he thought was fair.  He had bought the property and it was transferred to the Trust encumbered with a lien in favor of First American Title Insurance Company. The note was bought by the Trust and the lien securing the property was foreclosed.  As trustee of the Trust, he decided to quit making payments on the note and to foreclose on the note, and the Trust "got it back" at the foreclosure sale. He admitted that he was in charge of overseeing all the entities and he had discretion with regard to "investments and use of funds."

Subsequent to the receipt of the deposition testimony, Sterquell tendered into evidence a certified copy of his original petition for the announced purpose of showing that "the suit was filed for purposes of [the] Fraudulent Transfer Act." He also tendered into evidence certified copies of the abstract of his judgment against Scott, the transfer of lien from First American Title Insurance Company to Neal B. Scott, as trustee of the Andrea Lynn Scott Trust, and plaintiff's exhibit 7, which consisted of certified copies of the seven deeds from Scott to the Trust we have referred to above. He also tendered his exhibit 9, which was a certified copy of a Substitute Trustees' Deed from Russel L. Robinson, as substitute trustee, to Neal B. Scott, as trustee of the Trust, which recited that it was the result of the foreclosure of a note in the original principal amount of $480,000 in favor of City Savings and Loan Association executed by Neal B. Scott (individually), and others dated January 11, 1989, covering a 5.191 tract of land out of sections 159 and 166, Block 2, A. B. & M. Survey in Potter County, as well as his exhibit 10, which was a correction substitute trustee's deed covering the same property described in his exhibit 10.

Sterquell's next witness was attorney Mitch D. Carthel, who testified that attorney's fees in the amount of $11,387.75 had been incurred by Sterquell up to the date of the testimony and that such fees were reasonable and necessary. He also averred that the amount due and owing on Sterquell's judgment as of the date of the testimony was $21,346.84.

Plaintiff Sterquell was called by Scott and was the next witness who testified. He said that he was a Certified Public Accountant and that a "collectible" abstract of judgment would be considered an asset. When asked, he acknowledged that he had served on the

board of First Federal Savings and Loan Association, which had failed. He acknowledged that he had filed a petition seeking Chapter 11 bankruptcy on August 6, 1991, in which he failed to separately list the judgment in question here as an asset, although it was included in a total figure of assets, but averred that he had settled with all his creditors and the proceeding was dismissed. He was also examined about his understanding of the effect of spendthrift trusts and limited partnerships and acknowledged that in a limited partnership, the limited partner's exposure to liability was limited to the partner's share in the limited partnership.

Scott then testified. He said that the Shapiro Family Limited Partnership was set up by his mother with the aid of her attorneys and that neither he nor his attorney had participated in its creation. He averred that the Neal Scott Trust's interest in the Limited Partnership was only "point 57650" and he personally had no interest in it. He then identified the Neal Scott Trust Agreement and it was received into evidence. He said that the trust was set up by his mother with the aid of her attorneys and an officer of Northern Trust Company, who held all his mother's assets in trust and "they managed the trust." He denied that he had ever conveyed any real property into the Limited Partnership and the assets of the Neal Scott Trust were limited to the amount of its interest in the Limited Partnership. He admitted that he was the lifetime beneficiary of that trust and funds belonging to the trust would be distributed to him "[i]f it's available." He testified that both the Neal Scott Trust and the Limited Partnership have filed tax returns with the Internal Revenue Service and their separate identities have never been challenged.

9

His testimony was then directed to the Andrea Lynn Scott Trust. He said that he was responsible for the creation of that trust and that it was created on October 1, 1990, which was before the date of Sterquell's judgment against him. His mother and his aunt had sizeable estates and at the time of the creation of the Limited Partnership and the Andrea Lynn Scott Trust, he and his mother were attempting to avoid estate and inheritance tax problems and his mother transferred the assets to the Trust. The Andrea Lynn Scott Trust had a tax ID number and had filed tax returns every year without being audited.

With reference to the property on which First American Title Insurance Company had a lien, he said he had purchased the property from that company and had signed a note and deed of trust in connection with the purchase. Although the Andrea Lynn Scott Trust purchased the note and lien from the company, he said the money for that purchase came directly from his mother with instructions that they be transferred to the Trust. Because the note was in default at the time and the company had threatened legal action, his mother decided to purchase the note and lien.

When queried whether he continued to actively manage and participate in management decisions for the Andrea Lynn Scott Trust, his response was "[o]n a day-to-day basis, not really." Other than being the lifetime income beneficiary, he denied he had any ownership interest in that trust. He also averred that neither the Neal Scott Trust nor the Limited Partnership in any way participated in "any transaction about which Mr. Sterquell is complaining." He also testified that the properties transferred into the Trust were not made to avoid payment to a judgment creditor, but "in order to take care of some rather

10

substantial estate and inheritance tax problems" and denied that it was created to evade any liabilities he might have owed.

Under cross-examination, he admitted that the Andrea Lynn Scott Trust was created after he had been sued by Sterquell but before the judgment was rendered. He also admitted that at the time the trust was created, he was in serious financial trouble. Even though he was in that condition, he insisted that the Trust was created for estate planning purposes because "[i]n 1990, we didn't know," and if his mother had died in December 1990, he "would have had real estate planning problems." He admitted that he was the trustee under the Trust, had control over what was paid out and, although he was just the life beneficiary, he had the right to manage it. He also admitted that he was the trustee of the Neal B. Scott Trust and a general partner in the Limited Partnership. He admitted that every one of the pieces of property listed in plaintiff's exhibit 7 was transferred to the Trust subsequent to the abstract of Sterquell's judgment except the last one, which was conveyed in October of 1990. When queried about the October 1990 conveyance being made before the date the Andrea Lynn Scott Trust was created in November 1990, his response was that the date was probably in error because the notary's acknowledgment was dated November 20, 1990.

The cross-examination then turned to the foreclosure of the lien purchased from First American Title Insurance Company. He said that the note and liens were bought by the Trust with money that his mother gave the Trust. He admitted that the property was owned by the Trust at the time of the foreclosure and in effect, it foreclosed the lien against itself and he was the trustee who made the decision to implement the foreclosure. He also

11

admitted that the record showed that the Trust purchased the First American Title Insurance Company lien for $63,000, but $150,000 was paid at the foreclosure sale. He did not know where the excess money went. The cross-examination then went to the deed of trust executed by Scott to secure the note in the original principal amount of $480,000 in favor of City Savings & Loan. The Trust owned that property at the time it was foreclosed upon by the Limited Partnership. He was examined and admitted that all his living expenses were paid for by the various entities for which he was trustee and he was the one who made the decisions on those reimbursements.

On re-direct, Scott was shown and identified a correction substitute trustee's deed which showed the property securing the lien purchased from City Savings & Loan was actually purchased at the foreclosure sale by the Limited Partnership for $200,000 and the purchase took place during the period of time when Scott's mother was controlling the Limited Partnership. The money, he averred, came directly from his mother's account while she was alive. He also said that none of his money went into the purchase of the First American Title Insurance Company lien by the Trust. He additionally averred that he lived a "rather meager lifestyle."

At the conclusion of the evidence, the trial judge noted the confusing state of the record concerning the various properties and conveyances. He directed that he be furnished with "an abbreviated title run" on the properties involved because of the complexity of the testimony relating to the various properties and the lack of clarity in the testimony. However, no such instrument is shown in the record.

12

The essence of Sterquell's action is that Scott created sham entities and fraudulently transferred the properties described in his first amended original petition to them to avoid the effect of Sterquell's abstract of judgment. The pertinent legislation concerning transfers of that nature is that contained in the Uniform Fraudulent Transfer Act (UFTA). That legislation is contained in Chapter 24 of the Business and Commerce Code (Tex. Bus. & Com. Code Ann. §§24.01 *et seq.* (Vernon 2002)). That statute provides that a transfer made, or an obligation incurred by a debtor is fraudulent as to a present or future creditor if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor. *See id*. §24.005(a)(1). It also provides that, among others, certain factors may be considered in determining whether a debtor acted with actual intent to hinder, delay, or defraud, namely:

1. if the transfer was to an insider;

2. if the debtor retained possession or control of the property transferred after the transfer;

3. if the transfer was concealed;

4. if before the transfer was made or the obligation incurred, the debtor had been sued or threatened with suit;

5. if the transfer was of substantially all the debtor's assets;

6. whether the debtor absconded;

7. whether the debtor removed or concealed assets;

8. whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

9. whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

10. whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and

11. whether the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id*. §24.005(b). A fraudulent intent must be affirmatively shown and will not be presumed. *Englert v. Englert*, 881 S.W.2d 517, 518 (Tex. App.–Amarillo 1994, no writ).

We find that Sterquell's asserted points of error are sufficient to challenge both the legal and the factual sufficiency of the evidence to support the trial court judgment. In considering Sterquell's legal insufficiency or no evidence point, we must view the evidence in a light that tends to support the disputed findings and disregard evidence and inferences to the contrary. If more than a scintilla of evidence supports the challenged findings, the no evidence challenge must fail. *Wal-Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex. 2003). In considering factual insufficiency challenges, we must review all the evidence, both favorable and unfavorable, and may only reverse if the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 664-65, 244 S.W.2d 660, 661 (1951).

In conducting our review of those factual insufficiency challenges, we do not reweigh the evidence and set the finding aside merely because we feel that a different result is more reasonable. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex. 1986), *overruled on other grounds by Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378 (Tex. 2000). The factfinder, whether jury or trial court in a bench trial, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 549 (1962). The factfinder may believe one witness and disbelieve another and it may resolve inconsistencies in testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.

1986). When there is enough evidence before the factfinder that reasonable minds could differ on the meaning of the evidence or the inferences or conclusions to be drawn from the evidence, we may not substitute our judgment for that of the factfinder nor may we reverse merely because we conclude the evidence preponderates toward answers different from those found by the factfinder. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988).

After reviewing the evidence in the light by which we must view it, while the evidence might have been sufficient to raise fact issues, we cannot say that the trial court's resolution of those factual issues was against the great weight and preponderance of the evidence. Without again detailing the evidence we have set out above, this is particularly true in view of the lack of any evidence that Scott had any part in the creation of the Limited Partnership or that he transferred any property to that entity, coupled with the testimony that the Partnership purchased and foreclosed on the City Savings and Loan Association lien. Additionally, the evidence in regard to the creation of the Andrea Lynn Scott Trust and its foreclosure of the First American Title Insurance Company lien supports the trial court's resolution of the evidence. The trial court could well have also placed emphasis on the paucity of evidence bearing on the question as to whether the properties transferred constituted all or a substantial part of the property owned or that might have been owned by Scott. The trial court could also have accepted the testimony that the various entities were created for legitimate estate planning purposes and, in most instances, were not created by Scott. Moreover, it could have placed some credence in the fact that the transfers were matters of public record and apparently without any attempt to hide them.

In sum, under the record before us, reasonable minds could differ on the meaning of the evidence and the inferences or conclusions to be drawn from that evidence. That being so, we must, and do, overrule Sterquell's points and affirm the judgment of the trial court.

John T. Boyd
Senior Justice