**JACKSON LAW OFFICE, P.C.,**
**et al., Appellants,**

v.

**Verna Kay CHAPPELL,**
**et al., Appellees**

No. 12–98–00210–CV.

Court of Appeals of Texas,
Tyler.

May 31, 2000.

Rehearings Overruled Aug.
16 and 30, 2000.

---

Gary D. Jackson, Lindale, Ken W. Good, Tyler, for Appellants.

Catherine Kennington, Brownsboro, Paul M. Boyd, Roger Anderson, Tyler, for Appellees.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

TOM B. RAMEY, Jr., Chief Justice.

In a fee dispute between Gary Jackson and Gloria Jackson, also known as The Jackson Law Offices, P.C., and their client Verna Chappell, the trial court awarded the Jacksons breach of contract damages, but awarded no damages to Chappell on her cross-actions. Both appeal. We will modify the trial court's judgment, affirm in part and reverse and remand in part.

## BACKGROUND

Chappell retained the Jacksons to represent her in a divorce action. The dispute stems from Chappell's allegation that the Jacksons agreed to handle the divorce for a maximum of $3,000.00. The Jacksons, on the other hand, asserted that they were retained to handle the matter for $150.00 per hour. The Jacksons maintained that Chappell owed them over $60,000.00 in attorney's fees, that she was aware of this debt, and that she refused to pay. Furthermore, they contended that as a way of protecting her assets from the Jacksons, Chappell fraudulently transferred property to R.A. Moreau and Catherine Kennington to defraud the Jacksons.

Chappell answered denying that she owed any fees to the Jacksons. Chappell and Moreau countersued alleging violations of the Texas Deceptive Trade Practices Act, breaches of fiduciary duties and violations of the Texas Debt Collection Act. One of the major allegations of wrongdoing against the Jacksons was that they coerced Chappell into executing an assignment of the proceeds from several properties without disclosing the consequences of entering into such a transaction, and in violation of a court order in the Chappell's divorce proceeding.

Moreau and Kennington answered denying that any property was transferred to them fraudulently. The case proceeded to trial. The jury returned a mixed verdict. The jury found in favor of the Jacksons on their claim against Chappell alleging that

she had breached her agreement to pay attorney's fees. The jury also found that certain properties transferred to Moreau and Kennington were transferred fraudulently. The jury awarded the Jacksons $43,000.00 for Chappell's breach of agreement to pay attorney's fees and $5,000 .00 as damages for the fraudulent transfers. The jury also found in favor of Chappell and Moreau regarding their DTPA claims, violation of the Texas Debt Collection Act, and Chappell's breach of fiduciary duty claim. The jury awarded zero actual damages and $5,000.00 additional damages. The jury declined to award attorney's fees to the Jacksons on their breach of contract claim or to Chappell or Moreau on their DTPA and Debt Collection Act claims. The trial court entered judgment awarding $43,000.00 in damages to the Jacksons, less a $5,000.00 fee forfeiture for breaching their fiduciary duty to Chappell. The court did not award damages for the fraudulent transfers, nor did it set aside the transfers as requested by the Jacksons. No parties were awarded attorney's fees, and each were ordered to pay their own costs. The Jacksons and Chappell filed motions for new trial, which were overruled. This appeal followed.

## THE JACKSONS' ISSUES

The Jacksons assert that the trial court erred when it denied both equitable and legal relief for Chappell's fraudulent transfers, when it denied court costs, and when it ordered a $5,000.00 fee forfeiture. They also complain that the evidence is neither legally nor factually sufficient to support the jury's finding that they breached their fiduciary duty and that their attorney's fees for prosecuting the case had a zero value. Because the Jacksons' issues four and six complain of the sufficiency of the evidence, we will address those first.

## STANDARD OF REVIEW

In reviewing a no evidence point, an appellate court must consider only the evidence and inferences that tend to support the jury's verdict, disregarding all contrary evidence and inferences. *Wal-Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998). We may only sustain a "no evidence" point when the record discloses one of the following: 1) a complete absence of evidence of a vital fact; 2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; 3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or 4) the evidence establishes conclusively the opposite of a vital fact. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). It is not within our power to second guess the factfinder unless only one inference can be drawn from the evidence. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 461 (Tex. 1992). If there is more than a scintilla of evidence to support the finding, the evidence is legally sufficient. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993).

When conducting a factual sufficiency review, this court must consider all of the evidence, including any evidence contrary to the verdict. *Plas–Tex., Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). We must reverse on the basis of a factual insufficiency or great weight and preponderance point if the jury's finding is so against the great weight and preponderance as to be manifestly unjust, it shocks the conscience, or clearly demonstrates bias. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). If we sustain a factual insufficiency or great weight and preponderance point, we can only remand the case. "Our present Constitution empowers the courts of appeals to 'unfind' facts, even if they cannot 'find' them." *Id.* at 634. Findings of fact are the exclusive province of the jury. *Bellefonte Underwriters Ins. Co. v. Brown,* 704 S.W.2d 742, 744 (Tex.1986). This court is not a fact finder and may not pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if a

different answer could be reached on the evidence. *See Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988); *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.— Dallas 1986, writ ref'd n.r.e.).

## BREACH OF FIDUCIARY DUTY AND FEE FORFEITURE

In their fourth issue, the Jacksons assert that Chappell's claim for breach of fiduciary duty is barred by the statute of limitations. They also claim that there is neither legally nor factually sufficient evidence to support a finding that they breached their fiduciary duty to Chappell. But they follow with the complaint that even if there is sufficient evidence, the trial court abused its discretion when it required the Jacksons to forfeit $5,000.00 of their fee in spite of the jury's finding that the breach of fiduciary duty did not cause Chappell any harm.

*Statute of Limitations*

In regards to the cause of action being barred by the statute of limitations, the Jacksons waived this complaint when they failed to affirmatively plead it. TEX. R. CIV. P. 94.

*Breach of Fiduciary Duty*

The relationship existing between attorney and client is characterized as "highly fiduciary", and requires proof of "perfect fairness" on the part of the attorney. *Archer v. Griffith,* 390 S.W.2d 735, 739 (Tex.1965). The "fail safe" mechanism of the fiduciary relationship is the duty of full disclosure. A fiduciary has much more than the traditional obligation not to make any material misrepresentations; he has an affirmative duty to make a full and accurate confession of all his fiduciary activities, transactions, profits, and mistakes. *See Montgomery v. Kennedy,* 669 S.W.2d 309, 312–14 (Tex.1984); *Kinzbach Tool Co., Inc. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 513–14 (1942). The breach of the duty of full disclosure by a fiduciary is tantamount to fraudulent concealment. *Willis v. Maverick,* 760 S.W.2d

642, 645 (Tex.1988). And where "self-dealing" by the fiduciary is alleged, a "presumption of unfairness" automatically arises and the burden is placed on the fiduciary to prove (a) that the questioned transaction was made in good faith, (b) for a fair consideration, and (c) after full and complete disclosure of all material information to the principal. *See Stephens County Museum, Inc. v. Swenson,* 517 S.W.2d 257, 261 (Tex.1974); *Int'l. Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 576 (Tex.1963).

The evidence shows that the Jacksons were vague about their fee arrangement, and did not reduce the fee agreement to writing. The Jacksons failed to maintain billing records, failed to record services rendered, and failed to provide billing statements to Chappell. During the second divorce proceeding, the Jacksons and Chappell represented to the court that there had been $18,000.00 in attorney's fees to that point. Later, when Chappell requested an itemized statement of those attorney's fees, the Jacksons refused to provide it to her unless she agreed to pay whatever the itemization showed, although it would be more than $18,000.00. There is some evidence that the Jacksons inflated the hours charged during the course of the representation. Furthermore, they charged Chappell for defending themselves against a grievance filed by her husband. Chappell testified that the Jacksons misrepresented to her that her husband would be responsible for her attorney's fees. As a prerequisite for continuing to represent her, the Jacksons required Chappell to execute an assignment of the proceeds from certain properties, and failed to make appropriate disclosures of the legal effect of the assignment. Neither did they recommend that Chappell seek outside legal counsel before entering into the agreement. In addition, there is evidence that the assignment was taken in violation of standing court orders, in the Chappell's divorce action which could have subjected Chappell to possible contempt

proceedings. The evidence supports the jury's finding of breach of fiduciary duty in that there is evidence of failure to disclose, misrepresentation, conflict of interest, and self-dealing.

*Fee Forfeiture*

 The Supreme Court, in *Burrow v. Arce*, 997 S.W.2d 229 (Tex.1999), has clarified its position on fee forfeitures. Once the jury finds that an attorney has breached his fiduciary duty to his client, the trial court determines the amount of any fee forfeiture, since forfeiture is an equitable remedy. *Id.* at 234. It is within the discretion of the court whether the attorney who has committed a breach of trust shall receive full compensation or whether his compensation shall be reduced or denied. *Id.* at 243. And a trial court may order a fee forfeiture whether or not the client sustains actual damages. *Id.* at 238, 240. In the instant case, the jury found that the Jacksons breached their fiduciary duty to Chappell, even though it also found that she was not injured by that breach. We hold, therefore, that the trial court did not err when it required the Jacksons to forfeit a portion of their fee. We overrule issue four.

### ATTORNEY'S FEES

 In issue six, the Jacksons argue that the jury's answer of zero to the question regarding the award of attorney's fees for breach of contract was against the great weight and preponderance of the evidence. The trial court erred, therefore, when it denied their motion for judgment notwithstanding the verdict and awarded no attorney's fees. The issue of whether a party is entitled to recover attorney's fees is a question of law for the court to determine. *Holland v. Wal–Mart Stores*, 1 S.W.3d 91, 94 (Tex.1999). Pursuant to the Civil Practice and Remedies Code, "[a] person may recover reasonable attorney's fees ... in addition to the amount of a valid claim and costs, if the claim is for ... an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 1997). Therefore, if their breach of contract claim was successful, the Jacksons were entitled to recover attorney's fees. The trial court accordingly charged the jury on that basis of recovery. It then became the job of the jury to listen to the evidence and resolve the issues of fact thereto.

 The award of reasonable attorney's fees to a plaintiff recovering on a valid claim founded on a written or oral contract is mandatory under Texas law. *In re Smith*, 966 F.2d 973, 978 (5th Cir. 1992). Once the jury finds that a party should prevail on a claim upon which attorney's fees are mandated, the only question remaining for the jury is the reasonable value of the attorney's fees and not whether they should be awarded. *Satellite Earth Stations East v. Davis*, 756 S.W.2d 385, 387 (Tex.App.—Eastland 1988, writ denied). However, the award becomes mandatory only after the fees are proven reasonable. *Kimbrough v. Fox*, 631 S.W.2d 606, 609 (Tex.App.—Fort Worth 1982, no writ). Generally, if evidence of reasonable attorney's fees is offered, a finding that the services of an attorney are without monetary value is factually insufficient. *First Texas Sav. Ass'n of Dallas v. Dicker Center, Inc.*, 631 S.W.2d 179, 188 (Tex.App.—Tyler 1982, no writ). When a lawsuit involves multiple claims or multiple parties, the proponent has a duty to segregate non-recoverable fees from recoverable fees, and to segregate the fees owed by different parties. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex.1991). However, if a party does not properly segregate attorney's fees, it would be error to completely deny attorney's fees on contract claims, as evidence of unsegregated attorney's fees is more than a scintilla of evidence of segregated fees. *Panizo v. Young Men's Christian Ass'n of Greater Houston Area*, 938 S.W.2d 163, 171 (Tex. App.—Houston [1st Dist.] 1996, no writ).

 Rule 1.04 of the Rules of Professional Conduct state the following:

(a) A lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee. A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable.

(b) Factors that may be considered in determining the reasonableness of a fee include, but not to the exclusion of other relevant factors, the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

TEX. GOV'T CODE ANN. Title 2, Subt. G., App. A (State Bar Rules, art. X, § 9) (Vernon 1998). The Texas Supreme Court, in *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812 (Tex.1997), held that "the plaintiff cannot simply ask the jury to award a percentage of the recovery as a fee because without evidence of the factors identified in Disciplinary Rule 1.04, the jury has no meaningful way to determine if the fees were in fact reasonable and necessary." *Id.* at 818–19. The Supreme Court was specifically dealing with a DTPA action in *Arthur Andersen.* But we believe that the same analysis applies to any proceeding where the attorney's fees are shifted from one party to the other, such as in the instant contract case, since section 38.001 requires that attorney's fees awarded must be "reasonable." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001.

In the case before us, Mrs. Jackson testified that a reasonable fee for the services rendered by her firm to prosecute the breach of contract case against Chappell was one-third of the damages awarded to them. She also described various proceedings in which she and her husband were required to participate in order to prosecute their case. She made it clear that she was only testifying about the services rendered in the breach of contract case. Mrs. Jackson did not testify concerning any of the other factors enumerated in Rule 1 .04. We hold that the evidence of attorney's fees was legally sufficient, in that it was more than a scintilla of evidence of the value of services rendered. And the jury's finding that the Jacksons's fees in their breach of contract case had zero value is against the great weight and preponderance of the evidence. However, because the Jacksons did not offer sufficient testimony of the Rule 1.04 factors, we must return the issue of attorney's fees to the trial court for further proceedings. We sustain issue six.

## FRAUDULENT TRANSFERS

In their first three issues, the Jacksons complain that the trial court erred when it disregarded the jury's finding, on Chappell's motion, that Chappell had fraudulently transferred property to Moreau and Kennington. The Jacksons assert that the trial court should have set aside the transfers or entered a joint and several judgment against all defendants up to the value of the transfers. They also maintain that the trial court erred when it refused to enter judgment on the $5,000.00 in dam-

ages found by the jury to have been suffered by the Jacksons because of the fraudulent transfers.

Pursuant to Rule 38.2(b) of the Texas Rules of Appellate Procedure, Chappell and Moreau file cross-points to support the trial court's judgment disregarding jury answers in order to prevent waiver. In her first four issues, cross-appellant Chappell complains that there is neither legally nor factually sufficient evidence to support the jury's findings that she engaged in fraudulent transfers. Moreau joins in these issues as they pertain to himself. In issues five and six, Chappell asserts that there is neither legally nor factually sufficient evidence to support the jury's finding that the Jacksons suffered $5,000 in damages because of the alleged fraudulent transfers.

 The general rule is that a debtor has the right to prefer his obligation to one creditor over an obligation to another creditor. *Englert v. Englert,* 881 S.W.2d 517, 518 (Tex.App.—Amarillo 1994, no writ). However, that right to prefer does not extend to transfers made in fraud of the rights of the other creditors. *Id.* The Uniform Fraudulent Transfer Act ("UFTA") creates the statutory cause of action through which a creditor may seek recourse for a fraudulent transfer. The UFTA states the following:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Tex. Bus. & Com. Code Ann. § 24.006(b) (Vernon 1987). An "insider" is defined in the following manner:

(A) if the debtor is an individual:

 (i) a relative of the debtor or of a general partner of the debtor;

 (ii) a partnership in which the debtor is a general partner;

 (iii) a general partner in a partnership described in subparagraph (ii) of this paragraph; or

 (iv) a corporation of which the debtor is a director, officer, or person in control.

Tex. Bus. & Com. Code Ann. § 24.002(7). Insolvency is determined as follows:

(a) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.

(b) A debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent.

Tex. Bus. & Com. Code Ann. § 24.003 (Vernon Supp.1994). The question of insolvency is to be determined as of the time of the conveyance. *In re Tryit Enterprises,* 121 B.R. 217, 223 (Bankr.S.D.Tex.1990).

*Analysis*

 The jury found that Chappell had fraudulently transferred a second lien in her Tyler house and a portion of the proceeds from the sale of timber to Moreau, and that she had fraudulently transferred her Anderson County house and land to Kennington. In her first subpoint, Chappell argues that there is no evidence that she engaged in fraudulent transfers since neither Kennington or Moreau are "insiders" as that term is defined by the UFTA. Moreau also asserts that he does not constitute an insider because he does not fit into any of the above-cited categories. Construing the statute with the aid of the Code Construction Act, "includes" and "including" are "terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded." Tex. Gov't Code Ann. § 311.005(13) (Vernon 1998). Thus, we conclude that by stating "Insider includes:," the drafters of UFTA do not intend to limit an insider to the four listed

subjects. Rather, the list is for purposes of illustration. *See In re Holloway*, 955 F.2d 1008, 1010 (5th Cir.1992). In general, an "insider" is an entity whose close relationship with the debtor subjects any transactions made between the debtor and the insider to heavy scrutiny. *U.S. v. Shepherd*, 834 F.Supp. 175, 181 (N.D.Tex. 1993), *rev'd on other grounds*, 23 F.3d 923 (5th Cir.1994). The Fifth Circuit has held that the principal factors in determining insider status are: 1) the closeness of the relationship between the transferee and debtor; and 2) whether the transactions were at arm's length. *In re Holloway*, 955 F.2d at 1010.

In regards to Kennington, it is undisputed that she is Chappell's mother, and a mother is a relative as that term is defined by the UFTA.[1] And a review of the evidence reveals that Moreau had a close personal relationship with Chappell. He lived with Chappell for a time; there was some evidence that he and Chappell were lovers; he was once in a business partnership with Chappell; and he gave Chappell gifts and loans. We hold that the evidence is both legally and factually sufficient to support a finding that Kennington and Moreau are insiders.

In her second subpoint, Chappell argues that there is no evidence that the transfers rendered her insolvent. We note, however, that the relevant question is whether she was insolvent at the time of the transfers. After reviewing the evidence, we find that the jury could have concluded that when each of the transfers was made, Chappell's debts far outweighed her assets. Prior to the first transfer, Chappell was approximately $648,734.00 in debt, but the value of her assets was considerably less, at approximately $431,830.00. Nothing in the record indicates that Chappell's assets or debts changed to such an extent that she became solvent at any time before trial. Furthermore, during trial, Chappell admitted that throughout the relevant time period, she had expenses which exceeded her ability to pay. We hold, therefore, that the evidence is both legally and factually sufficient that Chappell was insolvent when she executed a promissory note on the Tyler house and gave a portion of the proceeds from the sale of timber to Moreau and when she transferred the Anderson County house and land to Kennington.

In her third subpoint, Chappell contends that there is no evidence that the transfers in question were made for anything but payment of her legitimate debts. Because the question of whether or not she was paying legitimate debts when she transferred the property is not an element of a fraudulent transfer, this subpoint is irrelevant.

### Setting Aside the Transfers

Finding that there is sufficient evidence of fraudulent transfers, we now turn to the Jacksons' issues. In their first issue, they complain that the trial court erred when it did not set aside the fraudulent transfers upon the jury's findings that Chappell, Moreau and Kennington had, in fact, engaged in a fraudulent transfer of assets. Chappell argues, on the other hand, that it was appropriate that the court did not grant the Jacksons an equitable remedy since they did not come before the court with clean hands.

Setting aside a fraudulent transfer is an equitable remedy. *See Texas Sand Co. v. Shield*, 381 S.W.2d 48, 53 (Tex.1964). A district court, in contemplation of exercising its traditional equitable powers, must weigh several factors to determine whether a party's request for equitable relief should be granted, including: probability of irreparable damage to the moving party in the absence of relief, possibility of harm to the nonmoving party if the requested relief is granted, and public interest. *Wenner v. Texas Lottery Com'n*,

---

1. "Relative" is defined as "an individual related by consanguinity within the third degree as determined by the common law . . . ." TEX. BUS. & COM. CODE ANN. § 24.002(11).

123 F.3d 321, 325 (5th Cir.), *cert. denied*, 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). The judgment of a trial court granting an equitable remedy (or, conversely, denying an equitable remedy) should not be disturbed in the absence of a showing that an inequity resulted. *Foust v. Hanson*, 612 S.W.2d 251, 252 (Tex.Civ.App.—Beaumont 1981, no writ).

Normally, fraud vitiates all transactions, and if action is taken for a fraudulent purpose to carry out a fraudulent scheme, such action is void and of no force or effect whatever; equity will compel fair dealing, disregarding all forms and subterfuges, and looking only to the substance of things. *Libhart v. Copeland*, 949 S.W.2d 783, 794 (Tex.App.—Waco 1997, no writ). However, there are maxims of equity, some of which may apply to negate the application of equity. For example, he who seeks equity must do equity and he who comes into equity must come with clean hands. *Bush v. Gaffney*, 84 S.W.2d 759, 764 (Tex.Civ.App.—San Antonio 1935, no writ).

Whether a party has come into court with clean hands is a matter for the sound discretion of the court. *Compaq Computer Corp. v. Procom Technology, Inc.*, 908 F.Supp. 1409, 1428 (S.D.Tex. 1995); *Grohn v. Marquardt*, 657 S.W.2d 851, 855 (Tex.Civ.App.—San Antonio 1983, writ ref'd n.r.e.). The doctrine is applied to one whose own conduct in connection with the same matter or transaction has been unconscientious or unjust, or marked by a want of good faith, or has violated principles of equity and righteous dealing. *See Lazy M Ranch, Ltd. v. TXI Operations, LP*, 978 S.W.2d 678, 683 (Tex.App.—Austin 1998, writ denied); *Ligon v. E.F. Hutton & Co.*, 428 S.W.2d 434, 437 (Tex. Civ.App.—Dallas 1968, writ ref'd n.r.e.). The doctrine is founded on public policy, and its application must be limited in consideration of whether or not the public policy of the state will be best conserved by applying or refusing to apply it in a given case. *See Kirkland v. Handrick*,

173 S.W.2d 735, 737 (Tex.Civ.App.—San Antonio 1943, writ ref'd w.o.m.).

It has been traditionally held that in order to justify the application of the doctrine, the defendant must show that he suffered injury as a result of the plaintiff's conduct. *Grohn*, 657 S.W.2d at 855. But because of the Supreme Court's decision in *Burrow v. Arce*, wherein it held that the equitable remedy of fee forfeiture was not dependent upon a finding of injury, we conclude that it follows that when an attorney breaches his fiduciary duty, the attorney's client need not show that he suffered injury in order for the court to apply the doctrine of unclean hands to deny the attorney equitable relief. *See Burrow*, 997 S.W.2d at 238, 240.

The jury found that the Jacksons had breached their fiduciary duty to Chappell by, among other things, taking an assignment on proceeds from the sale of various assets in violation of a court order. The jury also found that the Jacksons engaged in an unconscionable course of action and violated the DTPA and the Debt Collection Act. Although the jury found that Chappell did not suffer any damages from these violations, the fiduciary duty owed by an attorney to his client is of such magnitude that the Jacksons did not come to the court of equity with clean hands. We hold that public policy of Texas is best preserved by applying the unclean hands doctrine in this case. Consequently, the trial court did not err when it denied the Jacksons the equitable set-aside of the fraudulent transfers. We overrule issue one.

*Damages*

To the extent a transfer is voidable in an action by a creditor, the creditor may recover judgment for the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less. TEX. BUS. & COM. CODE ANN. § 24.009(b). The jury charge in the instant case inquired whether Moreau and Kennington "acquired the property transferred by Chappell with either actual or

constructive notice of Chappell's fraudulent intent toward Plaintiffs." The jury answered "yes" as to both defendants. On a finding of "yes," the jury was instructed to determine what sum of money would fairly compensate the Plaintiffs for their actual damages. The jury answered "5,000.00" to the damage question. In its judgment, the trial court disregarded the jury answer and did not award the Jacksons any damages for the fraudulent transfers.

■ A trial court may render judgment contrary to the jury's findings only if, as a matter of law, evidence establishes the contrary to what the jury found. *Calhoun v. Chase Manhattan Bank (U.S.A.), N.A .*, 911 S.W.2d 403, 409 (Tex.App.— Houston [1st Dist.] 1995, no writ). In the instant case, there is evidence of the value of the assets fraudulently transferred. There is also evidence of the amount of the Jacksons' claim. Because the evidence does not establish the contrary to what the jury found, the trial court erred when it rendered judgment contrary to the jury's findings. We sustain the Jacksons' issues two and three, and overrule Chappell's cross-points one through six and Moreau's cross-points one and two. Consequently, we hold that Chappell, Moreau and Kennington are jointly and severally liable for the $5,000.00 in damages caused by the fraudulent transfers, and we reform the judgment accordingly.

## ADDITIONAL DAMAGES UNDER THE DTPA AND TDCA

The jury found that the Jacksons violated the DTPA and the TDCA, found no actual damages, but did find $5000.00 in additional damages. In issue five, the Jacksons complain that the trial court erred when it reduced the Jacksons' recovery by $5,000.00. However, in reviewing the judgment, it is clear that the trial court did not award any damages to either Chappell or Moreau for violations of the DTPA and TDCA, or on any other basis. The $5,000.00 to which the Jacksons are apparently referring is the fee forfeiture, which complaint we have previously overruled. Consequently, we also overrule issue five.

## COSTS

■ In issue seven, the Jacksons complain that the trial court did not award them court costs. Rule 131 of the Texas Rules of Civil Procedure states that the successful party to a suit shall recover from his adversary all costs incurred, except where otherwise provided. TEX. R. CIV. P. 131. Rule 141 states that the court may, for good cause stated on the record, adjudge the costs differently. TEX. R. CIV. P. 141. The Jacksons argue that they were the successful parties, and should have been awarded costs. They base their position upon the fact that Chappell was not awarded any actual damages and is therefore not entitled to recover the additional damages. Furthermore, they argue that the trial court should have set aside the fraudulent transfers. We disagree because Chappell was also a successful party based upon the jury's findings of intentional and knowing deceptive debt collection practices, false, misleading and deceptive practices under the DTPA, unconscionable course of action and breach of the Jackson's fiduciary duty. Such findings entitled Chappell to a fee forfeiture. Accordingly, the trial court was within its discretion to award costs of court against the parties incurring the same. *Building Concepts, Inc. v. Duncan*, 667 S.W.2d 897, 905–6 (Tex.App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.). We overrule issue seven.

## CHAPPELL'S CROSS–POINTS

In nine cross-points, Chappell complains that there is neither legally nor factually sufficient evidence to find that she breached a contract for $43,000.00 in attorney's fees, that the trial court erred in failing to forfeit only $5,000.00 of the Jacksons' fees, and that the jury's finding of zero damages for violations of the DTPA and Debt Collection Act, as well as a finding of zero for

the award of reasonable attorneys' fees, was against the great weight and preponderance of the evidence.

## BREACH OF CONTRACT

In her first five cross-points, Chappell asserts that there is neither legally nor factually sufficient evidence to support the jury's finding that she owed and failed to pay the Jacksons $43,000.00 for legal services rendered on her behalf. The Jacksons' testimony that Chappell accumulated over $60,000.00 in attorney's fees, but refused to pay, is legally sufficient to support a jury question. Looking at the record as a whole, there was conflicting testimony. Chappell asserted that the Jacksons agreed to handle her divorce for $3,000.00, and that she had paid that sum. The Jacksons, on the other hand, testified that they told Chappell they charged $150.00 an hour, and that the divorce would probably not cost more than $3,000.00. However, because of numerous delaying tactics by Chappell's husband, two trials, untold hearings, an appeal, intervention in the husband's bankruptcy proceedings, a sheriff's sale, and two other unrelated cases, the fee far exceeded all parties' expectations. There was testimony that the Jacksons charged Chappell for their time spent on a grievance filed by Chappell's husband, which the jury could have found unreasonable. There was also some indication that the Jacksons may have overcharged for some services. We hold, therefore, that the evidence is factually sufficient to support the jury's finding that Chappell had a contract with the Jacksons to pay them $150.00 an hour, that those services were valued at $43,000.00, and that Chappell breached the contract by failing to pay the attorney's fees as agreed. We overrule cross-points one through five.

## FORFEITURE OF FEE

In cross-points six and seven, Chappell complains that the trial court abused its discretion in requiring the for-

feiture of only $5000.00 for the knowing and intentional breaches of their fiduciary duty to Chappell. As we stated earlier in this opinion, the trial court has the discretionary power to require an attorney to forfeit all, a portion, or none of his fees when he has breached his fiduciary duty to his client. In determining whether and to what extent forfeiture is appropriate, relevant considerations include the following:

1. the gravity and timing of the violation;
2. its willfulness;
3. its effect on the value of the lawyer's work for the client;
4. any other threatened or actual harm to the client; and
5. the adequacy of other remedies.

*Burrow*, 997 S.W.2d at 241. In order to find an abuse of discretion, we must conclude that the facts and circumstances of the case extinguish any discretion in the matter. *Johnson v. Hon. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex.1985).

We hold that the trial court did not abuse its discretion in requiring the Jacksons to forfeit less than the whole fee, considering the lack of evidence that the breach had any effect on the value of the attorneys' work for the client, the timing of the breach, and the jury's finding that Chappell was not harmed by the breach. We overrule Chappell's cross-points six and seven.

## DTPA AND TEXAS DEBT COLLECTION ACT— NO DAMAGES

At trial, the jury found that the Jacksons engaged in deceptive practices while attempting to collect on a debt, failed to disclose information about their services that was known at the time of the transaction with the intention to induce Chappell into a transaction she otherwise would not have entered into, and engaged in an act or practice that, to Chappell's detriment, took advantage of her lack of knowledge, ability, experience, or capacity to a grossly

unfair degree. In cross-point eight, Chappell complains that the jury's failure to find any damages for the Jacksons' above-described violations of the DTPA and Texas Debt Collection Act is so against the great weight and preponderance of the evidence as to be manifestly unjust. The elements of damage which were charged to the jury were as follows: 1) mental anguish; 2) damage to credit reputation; 3) the value of time spent by Verna Chappell responding or attempting to respond to such wrongful conduct; 4) the loss of profits from the sale of her real property; and 5) any incidental expenses incurred by Verna Chappell as a result of her inability to refinance her property.

We presume that the transaction to which the charge refers is the assignment to the Jacksons of the proceeds from the sale of the Tyler house, and the sale of the 37.25 acres and the house in Anderson County. Chappell testified that because of the assignment, which the Jacksons recorded, she was unable to sell the Tyler house, for a loss of $40,000.00. She was also denied the option of refinancing her property, for a resulting loss of approximately $200 .00 per month. Chappell further asserted that as a result of the assignment, she feared the loss of her tenants and became apprehensive that her friends and business acquaintances would be brought into the suit. The mental anguish which she suffered manifested itself though weight gain, nervousness, impatience with family, sleep disturbance, headaches requiring medication, and increased heart rate.

Upon cross-examination, Chappell admitted that the sale of the house fell through not only because of the recorded assignment, but because the buyers were unable to obtain financing. She also testified that she actually pocketed $10,000.00 when the sale did not take place. In regards to the refinancing of the property, Chappell stated simply that she was unable to do so because of the assignment. She did not disclose to the jury the interest rate she then had on the house, nor the rate which she could have gotten if she had refinanced. And she did not testify as to how she was harmed by the Jacksons' debt collection tactics, other than from suffering mental anguish. But a jury may disregard such subjective complaints and award no damages therefor. *See Lehmann v. Wieghat*, 917 S.W.2d 379, 385 (Tex.App.—Houston [14th Dist.] 1996, writ denied). There is no evidence at all regarding damage to Chappell's credit reputation or the value of her time spent or attempting to respond to the Jacksons' wrongful conduct.

The Jacksons testified that they vigorously prosecuted her divorce and that Chappell received an especially good judgment, being awarded most of the community property and a very large money judgment. Furthermore, the Jacksons were able to execute upon the money judgment for Chappell by seizing her husband's separate property.

We hold that, in light of the evidence as a whole, the jury's determination that Chappell was not harmed by the Jacksons is not so against the great weight and preponderance of the evidence as to be manifestly unjust. We overrule cross-point eight.

### ATTORNEY'S FEES

In her cross-point nine, Chappell asserts that the jury's answer that the attorney's fees she incurred as a consequence of her DTPA and Debt Collection Act claims were zero is against the great weight and preponderance of the evidence as to be manifestly unjust. The jury found, however, that Chappell suffered no damages as a result of the Jacksons' violations. In the absence of a judgment for actual damages under the DTPA, an award of attorney's fees is not proper. *Reuben H. Donnelley Corp. v. McKinnon*, 688 S.W.2d 612, 617 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). And under the Texas Debt Collection Act, a party may only be awarded attorney's fees if he successfully maintains an action for "actual

damages sustained as a result of a violation" of the Act. Tex. Fin. Code Ann. § 392.403(a)(2) (Vernon 1998). Because Chappell did not prove that any actual damages were caused by the Jacksons' debt collection practices, she did not successfully maintain an action under the Act and attorney's fees are, therefore, not appropriate. We overrule cross-point nine.

## CONCLUSION

We reverse and remand the issue of the Jacksons' attorney's fees for a new trial. We modify the judgment of the trial court to award $5,000.00 to the Jacksons, against Chappell, Moreau and Kennington, jointly and severally, for damages caused by their fraudulent transfers. And in all other respects, we affirm the judgment of the trial court.