Affirmed in Part, Reversed and Remanded in Part, and Opinion filed March
15, 2011.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00837-CV

___________________

 

Katsy Cluck, John W. Mecom, III, and Mary
Elizabeth Mecom Hahnfeld, Appellants

 

V.

 

John W. Mecom, Jr., As Trustee Of The Mary
Elizabeth Mecom Irrevocable Trust No. II, Appellee



 



 

On
Appeal from the 113th District Court

Harris County,
Texas



Trial Court Cause No. 2008-48306

 



 

 

OPINION

            Appellants, Katsy Cluck (“Katsy”), John W. Mecom, III
(“John”), and Mary Elizabeth Mecom Hahnfeld (“Mary Elizabeth”), appeal a
summary judgment in favor of appellee, John W. Mecom, Jr., as Trustee of the
Mary Elizabeth Mecom Irrevocable Trust No. II (“Mecom”), in appellants’ suit
for breach of fiduciary duty, conversion, and civil theft.  In four issues,
appellants contend the trial court erred by rendering a no-evidence summary
judgment relative to the merits of their claims and a traditional summary
judgment based on the statute of limitations.  We affirm the summary judgment
on appellants’ conversion and civil-theft claims but reverse and remand the
summary judgment on their claim for breach of fiduciary duty.[1]

I.                  
Background

Appellants are
three of Mecom’s four children.[2] 
Mary Elizabeth Mecom (“Mrs. Mecom”), now deceased, was Mecom’s mother and
appellants’ grandmother.  In 1983, Mrs. Mecom established “The Mary Elizabeth Mecom
Irrevocable Trust No. II.”  In the trust instrument, she conveyed certain
assets to the trust including a money-market fund, securities, bonds,
partnership interests, promissory notes, accounts receivable, “[a]ll household
goods and personal effects owned” by Mrs. Mecom, and real estate.  Mrs. Mecom
served as original trustee and named Mecom as successor trustee.  Mecom has
served as trustee since Mrs. Mecom’s death on May 4, 1996.  Under its terms,
upon Mrs. Mecom’s death, the trust terminated and appellants became successor
beneficiaries because no power of appointment was exercised in Mrs. Mecom’s
will.

On August 13,
2008, Katsy filed the underlying suit against Mecom and also joined John and
Mary Elizabeth as involuntary plaintiffs.  In their live pleading, appellants
allege that Mecom has not made any distributions to them as required under the
trust, has failed to fully disclose transactions involving trusts assets, and
converted, stole, and squandered assets.  Appellants further allege that Mecom
committed such misconduct via the following actions: (1) as executor of, and
sole heir under, Mrs. Mecom’s will, Mecom did not classify certain assets as
property of the estate when filing probate documents and estate-tax returns,
but after the probate matter was closed, he claimed ownership of these assets
as property of the estate rather than the trust; (2) Mecom forgave his own
debts to the trust without any consideration to the trust or the beneficiaries;
and (3) Mecom commingled trust assets with his own property or sold assets and
retained the proceeds.  Appellants plead claims for breach of fiduciary duty,
conversion, and liability under the Texas Theft Liability Act.  Appellants
request damages, a declaratory judgment “determining [their] rights and
interests,” an order compelling an accounting, attorney’s fees, removal of
Mecom as trustee, and appointment of a successor trustee or a receiver.

      Mecom filed an amended motion for summary judgment including (1) a
no-evidence ground challenging elements of appellants’ claims, and (2) a traditional
ground contending all claims are barred by the applicable statutes of limitations.[3]  In their
response, appellants presented evidence purporting to defeat the no-evidence
ground, and, consistent with their pleading, appellants raised the discovery rule
and doctrine of fraudulent concealment relative to the limitations ground.  On September
15, 2009, the trial court signed an order granting summary judgment on both the
no-evidence and traditional grounds.  Subsequently, the trial court denied
appellants’ motion for reconsideration.

II.              
No-Evidence Summary
Judgment

In appellants’ first three issues, they challenge
no-evidence summary judgment on all their claims.

A.     Standard of Review

After adequate time for discovery, a party may move
for summary judgment on the ground there is no evidence of one or more
essential elements of a claim on which an adverse party would have the burden
of proof at trial.  Tex. R. Civ.
P. 166a(i); W. Invs., Inc. v. Urena, 162
S.W.3d 547, 550 (Tex. 2005).  The movant must state the elements on
which there is no evidence.  Tex. R. Civ.
P. 166a(i).  Unless the respondents produce summary-judgment
evidence raising a genuine issue of material fact on the challenged element,
the trial court must grant the motion.  Id.; Urena, 162 S.W.3d at 550.  To
defeat a no-evidence motion for summary judgment, the non-movants need not
marshal their evidence, but must identify in their response evidence raising a
genuine issue of fact on the challenged elements.  See comment to Tex. R. Civ.
P. 166a(i); Johnson v.
Brewer & Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002); Pico v.
Capriccio Italian Rest., 209 S.W.3d 902, 912 (Tex. App.—Houston [14th Dist.] 2006, no pet.); San Saba
Energy, L.P. v. Crawford, 171 S.W.3d 323, 330 (Tex. App.—Houston [14th Dist. 2005, no pet.). 

We review a summary judgment de novo. 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex.
2003).  We take as true all evidence favorable to the nonmovants and indulge
every reasonable inference and resolve any doubts in their favor.  Id.

B.    Breach of Fiduciary Duty

The elements of
a claim for breach of fiduciary duty are (1) a fiduciary relationship between
the plaintiff and the defendant, (2) a breach by the defendant of his fiduciary
duty to the plaintiff, and (3) an injury to the plaintiff or a benefit to the
defendant as a result of the breach.  Priddy v. Rawson, 282 S.W.3d 588,
599 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing Lundy v.
Masson, 260
S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); Jones v.
Blume, 196
S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied); Punts v.
Wilson, 137
S.W.3d 889, 891 (Tex. App.—Texarkana 2004, no pet.)).  In his
motion, Mecom asserted that appellants have no evidence of the second and third
elements.[4]

A fiduciary “has
an affirmative duty to make a full and accurate confession of all his fiduciary
activities, transactions, profits, and mistakes.”  Jackson Law Office, P.C.
v. Chappell, 37 S.W.3d 15, 22 (Tex. App.—Tyler 2000, pet. denied)
(citing Montgomery
v. Kennedy, 669
S.W.2d 309, 312–14 (Tex. 1984); Kinzbach
Tool Co., Inc. v. Corbett-Wallace Corp., 160 S.W.2d 509, 513–14 (Tex. 1942)). 
Additionally, when a plaintiff alleges self-dealing by the fiduciary as part of
a breach-of-fiduciary-duty claim, a presumption of unfairness automatically
arises, which the fiduciary bears the burden to rebut.  See Houston
v. Ludwick, No. 14-09-00600-CV, 2010 WL 4132215, at *7 (Tex.
App.—Houston [14th Dist.] Oct. 21, 2010, pet. denied) (mem. op.); Chappell, 37 S.W.3d at 22
(citing Stephens
County Museum, Inc. v. Swenson, 517 S.W.2d 257, 261 (Tex. 1974); Int’l
Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567, 576 (Tex. 1963)).  Mecom admitted in his deposition that he owed a fiduciary
duty to manage the assets for appellants’ benefits and a duty to disclose his
personal transactions with the trust.

We question
whether a no-evidence summary judgment could be appropriate under the
circumstances of this case because Mecom bears the burden to fully disclose his
activities as fiduciary and prove the fairness of his personal transactions with
the trust.  See Houston, 2010 WL 4132215, at *7; Chappell, 37 S.W.3d at 22.  Nevertheless,
to the extent that a no-evidence summary judgment could be appropriate,
appellants presented sufficient evidence to defeat this ground by offering Mecom’s
testimony demonstrating his inability thus far to fully explain his activities
as trustee, including his personal transactions involving trust assets.  For
example, in his deposition, Mecom gave the following responses to inquiries
regarding various entries on an accounting he produced relative to the trust:

·       
“I’m not sure” when asked what trust assets had to be sold to pay
estate and inheritance taxes of Mrs. Mecom.

 

·       
“I can’t remember” when asked about assets he sold and for which
he retained the proceeds. 

 

·       
“I don’t recall” when asked if he ever repaid $35,324 he owed the
trust in 1996-97.

 

·       
“I don’t recall” when asked how the trust accumulated $81,314.57
in general and administrative expenses in 1997.

 

·       
“I don’t recall” when asked about a transaction he had with the
trust in 1999 totaling $96,161.26.

 

·       
“I don’t know” when asked how Mrs. Mecom’s debts increased by
$41,624 in 1999 when she had been deceased for three years.

 

·       
“I don’t know” when asked about charging general office and
administrative expenses of half-a-million dollars per year.

 

·       
“I don’t know” when asked how his account payable to the trust
was reduced by $536,691.

 

In his
appellate brief, Mecom asserts appellants failed to cite the whole of his
testimony demonstrating he deferred to his retained professionals, including
his accountant, John West, as more equipped to explain the transactions.  Mecom
further suggests appellants did not complain to the trial court that they
lacked an opportunity to obtain further information from these professionals
before submission of the motion for summary judgment.  Therefore, Mecom
suggests appellants have not met their burden to defeat no-evidence summary
judgment because they failed to present evidence that persons more familiar
with the transactions were unable to explain them.

However, on
this record, we conclude for several reasons that Mecom may not, at least for
summary-judgment purposes, merely defer to other professionals to justify his
inability thus far to prove fairness of the transactions.  First, once
appellants cited evidence in their response showing Mecom’s inability to
explain the transactions, the record contains no reply from Mecom informing the
trial court he deferred to other professionals to provide such explanations.  See
Tex. R. Civ. P. 166a(c) (providing trial court must grant motion for summary
judgment if “moving party is entitled to judgment as a matter of law on the
issues expressly set out in the motion or in an answer or any other response”);
Stiles v. Resolution Trust Corp., 867 S.W.2d 24,
26 (Tex. 1993) (recognizing that Rule 166a(c) unequivocally
restricts the trial court’s ruling to issues raised in the motion, response,
and any subsequent replies).  Second, the evidence indicated that certain
unexplained transactions involved Mecom personally, such as forgiveness of his own
substantial debt to the trust.  Finally, some evidence indicated Mecom and at
least his accountant have taken various seemingly inconsistent positions
regarding the trust assets, including the following: (1) Mecom claimed Mrs.
Mecom’s household goods and personal effects were conveyed to him under her
will, yet his testimony indicated he did not list these items in probate court
filings or estate-tax returns, prepared by his accountant and signed by Mecom;
(2) at one point, Mecom’s accountant told appellants the trust was never funded
because assets were not properly conveyed thereto, but Mecom’s testimony
indicating transactions regarding trust assets were conducted after creation of
the trust raises a reasonable inference such assets may have indeed existed;
and (3) Mecom claimed most trust assets were dissipated to pay Mrs. Mecom’s
liabilities, which fails to explain why debts to the trust may have been
forgiven.

In sum,
appellants presented evidence sufficient to raise a genuine issue of material
fact on whether Mecom breached his fiduciary duty.  Moreover, with respect to
the third element of appellants’ claim, evidence of breach constitutes evidence
that they have suffered an injury because transactions which Mecom has failed
thus far to explain involve disposition of assets for which appellants were the
intended beneficiaries.  Accordingly, the trial court erred by granting
no-evidence summary judgment on the claim for breach of fiduciary duty.  We
sustain appellants’ second issue.

C.        Conversion

In his motion
for summary judgment, Mecom asserted that appellants have no evidence of the
following elements of a conversion claim: (1) the plaintiff owned, possessed,
or had the right to immediate possession of personal property; (2) the
defendant wrongfully exercised dominion or control over such property; and (3)
the plaintiff suffered injury.  See United Mobile Networks, L.P. v.
Deaton, 939 S.W.2d 146, 147 (Tex. 1997) (per curiam); Burns v. Rochon,
190 S.W.3d 263, 268 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

We agree that
appellants did not raise a genuine issue of material fact on the second
above-cited element—whether Mecom wrongfully exercised dominion or control over
appellants’ property.  The extent of appellants’ summary-judgment response
relative to this element was the following paragraph:

[Mecom]
admits he was named as the successor trustee of the Trust by his mother, the
Settlor, and he admits that he has been acting as the trustee of the Trust
since she passed away on May 4, 1996. Schedule A to the Trust outlines the
assets which were conveyed to the Trust. 

...
Settlor has conveyed, transferred and assigned, and does by these presents
convey, transfer and assign unto the Trustee the assets and properties
described in Schedule A attached hereto and made a part hereof,...

 

Even
though Schedule A listed four pages of assets which were transferred to the
Trust, [Mecom] testified that he is not aware of any assets left in the Trust.
[Mecom] also admitted that although his mother set up the Trust for the benefit
of [Mecom’s] children, they did not receive anything from it. Since four pages
of assets were transferred to the Trust (of which [Mecom] admits he is the
Trustee), and [Mecom] has testified that the beneficiaries have not received
anything from the Trust, and he is not aware of any assets left in the trust,
there is at least a fact issue as to whether or not [Mecom] wrongfully
exercised dominion or control over the Trust assets.

 

(citations
to evidentiary exhibit numbers omitted).

 We conclude
these facts alone are insufficient to raise a reasonable inference that Mecom wrongfully
exercised dominion or control over trust assets.  Accordingly, the trial court
properly granted no-evidence summary judgment on appellants’ conversion claim. 
We overrule their second issue.

D.        Civil Theft 

The Texas Theft
Liability Act permits a civil cause of action for damages against a party who
commits theft via any of the numerous methods defined under the Texas Penal
Code.  See Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001–.005 (West
2005).  Under the theory applicable to the present case, the plaintiff must
prove the defendant unlawfully appropriated the plaintiff’s property with
intent to deprive the plaintiff of the property and the plaintiff sustained
damages.  See id. §§ 134.002, .003; Tex. Pen. Code Ann. § 31.03(a) (West
Supp. 2009).  In his motion for summary judgment, Mecom asserted that
appellants have no evidence of any elements of civil theft.

We agree that
appellants did not raise a genuine issue of material fact on whether Mecom
unlawfully appropriated appellants’ property with intent to deprive them of the
property.  Appellants’ summary-judgment response regarding this element was
identical in pertinent respects to their above-quoted response relative to the
conversion claim, except they contend the recited facts show “there is
definitely a fact issue as to whether or not [Mecom], as Trustee, unlawfully
appropriated, secured, or stole the Trust assets.”

Again, we
conclude these facts alone are insufficient to raise a reasonable inference
Mecom unlawfully appropriated trust assets, much less that he committed
any such conduct with intent to deprive appellants of the property. 
Accordingly, the trial court properly granted no-evidence summary judgment on
appellants’ civil-theft claim.  We overrule appellants’ first and third issues.

III.           
Traditional Summary
Judgment

Because the trial court erred by granting no-evidence
summary judgment on appellants’ claim for breach of fiduciary duty, we must
consider their fourth issue, challenging traditional summary judgment on the
statute-of-limitations ground.  See Knott, 128 S.W.3d at 216
(recognizing that, when trial court does not specify in its order grounds
relied on in granting summary judgment, appellate court must affirm if any ground
presented to the trial court and preserved for appellate review is meritorious).

A.    Standard of Review
and Applicable Law

A party moving for traditional summary judgment must
establish there is no genuine issue of material fact and he is entitled to
judgment as a matter of law.  See Tex. R. Civ. P. 166a(c); Knott,
128 S.W.3d at 215–16.  A defendant moving for summary judgment must
conclusively negate at least one element of the plaintiff’s theory of recovery
or plead and conclusively establish each element of an affirmative defense.  Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  If the defendant
establishes its right to summary judgment, the burden shifts to the plaintiff
to raise a genuine issue of material fact.  Id.

The accrual date of appellants’ claim is the pivotal
dispute with respect to the limitations issue in this case.  As a general rule,
a cause of action accrues when a wrongful act causes some legal injury, even if
the fact of injury is not discovered until later and even if all resulting
damages have not yet occurred.  S.V. v.
R.V., 933 S.W.2d
1, 4 (Tex. 1996).  The discovery rule, when applicable, defers
accrual of a cause of action until the plaintiff knew, or, exercising
reasonable diligence, should have known, of the facts giving rise to the cause
of action.  HECI Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998).

A defendant
seeking summary judgment based on limitations must (1) conclusively prove when
the cause of action accrued and (2) negate the discovery rule, if it applies
and has been pleaded or otherwise raised, by proving, as a matter of law, there
is no genuine issue of fact about when the plaintiff discovered, or in the
exercise of reasonable diligence should have discovered, the nature of her
injury.  KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988
S.W.2d 746, 748 (Tex. 1999).  If the movant establishes that limitations bars
the action, the nonmovant must then adduce summary-judgment proof raising a
fact issue to avoid the statute of limitations.  Id.

B.        Analysis

The four-year statute of limitations applies to a
claim for breach of fiduciary duty.  See Tex. Civ. Prac. & Rem. Code
Ann. § 16.004(a)(5) (West 2002).  In his motion for summary judgment, Mecom
contended appellants’ claim accrued when Mrs. Mecom died on May 4, 1996, or
alternatively, if the discovery rule is applicable, no later than December 16,
1998; thus, appellants’ suit, filed August 13, 2008, is barred by limitations. 


      Mecom cited Guardian Trust Co. v. Studdert, 36 S.W.2d 578,
583 (Tex. Civ. App.—Beaumont 1931), aff’d, 55 S.W.2d 50 (Tex. Comm’n
App. 1932, holding approved) and Nordyke v. Nordyke, No. 07-96-406-CV,
1998 WL 4508, at *3 (Tex. App.—Amarillo 1998, pet. denied) to support his position
that claims against a trustee accrue on the date the trust is terminated. 
However, these cases are not controlling in the present situation because
appellants have raised the discovery rule.  

In his motion,
despite contending the limitations period commenced upon Mrs. Mecom’s death,
Mecom also seemed to acknowledge that the discovery rule may be applicable to a
claim for breach of fiduciary duty.  Indeed, the Texas Supreme Court has held
that a fiduciary’s misconduct is inherently undiscoverable.  S.V., 933 S.W.2d at 8; Computer
Assocs. Int’l, Inc. v. Altai, Inc., 918 S.W.2d 453, 456 (Tex. 1996).  The reason
for this principle is that a person to whom a fiduciary duty is owed is either
unable to inquire into the fiduciary’s actions or unaware of the need to do so.
 S.V., 933 S.W.2d at 8.  Although a person to whom a fiduciary duty is
owed is relieved of the responsibility of diligent inquiry into the fiduciary’s
conduct so long as that relationship exists, when the fact of misconduct
becomes apparent, it can no longer be ignored, regardless of the nature of the
relationship.  Id.; see Computer
Assocs., 918
S.W.2d at 456.

Ascertaining the
date that a claimant knew, or should have known, of an injury generally entails
a fact question.  See Childs v.
Haussecker, 974
S.W.2d 31, 37–39 (Tex. 1998).  However, if reasonable minds could
not differ about the conclusion to be drawn from facts in the record, commencement
of the limitations period may be determined as a matter of law.  See id. 
We conclude Mecom failed to prove as a matter of law that appellants knew, or
should have known, of their alleged injury as of December 16, 1998.[5]

Other than
recitals of the general law applicable to limitations and the discovery rule,
the following is the extent of Mecom’s argument in his motion for summary
judgment regarding the accrual date if the discovery rule is applicable:

Assuming,
arguendo, that [appellants’] claims against [Mecom] did not accrue when
the Trust terminated upon Mrs. Mecom’s death on May 4, 1996 (which [Mecom]
expressly denies), the evidence proves that accrual occurred no later than December
16, 1998. On that date, [appellants] forwarded [Mecom] a letter advising of
concerns with regard to the Trust and their interest in same.  See Exhibit H. Prior
to sending such missive, [appellants] met with [Mecom’s] accountant, West, to
discuss the Trust, and were informed that they would not be receiving anything
from the Trust.

 

The referenced
meeting occurred in 1998 between appellants, Bill Becknell (Mecom’s attorney),
and John West (Mecom’s accountant).  In their depositions taken after this suit
was filed, appellants each testified West informed them during the meeting
that, in essence, the trust had not been funded properly because the assets
were not individually itemized in the trust instrument.  Then, appellants wrote
and all signed the referenced December 16, 1998 letter, the body of which is
pertinent in its entirety:

Dear Daddy:

 

As you know, at your
suggestion, we recently had a meeting with Bill Becknell and John West in order
to obtain information regarding any interest we may have in the Mary Elizabeth
Mecom Trust or in Grandmother’s estate. Billy and John suggested that we write
this letter to state our objectives and try to get answers to some of our
concerns.

Our objective is to simply be proactive in resolving all the
issues concerning Grandmother’s estate in the friendliest and beneficial way to
all those involved. We also feel that by writing this letter and letting
everybody be on the same page we can continue to build and foster our family
bond.

 

In our last family meeting, it was our understanding that you
would keep us updated on the status of Mary Elizabeth Mecom Trust and the
Estate. Since that meeting we basically have not been told anything about what was
going on with the Trust and the Estate, such as the status of the payment of
liabilities and taxes, and the sale of assets. Although we met with Billy and
John, they did not provide enough information to answer most of our questions.
Therefore, we would like to schedule another meeting in the near future in
order to obtain the answers to two basic questions:

 

1.        What, if any interest do you feel we have in the
Mary Elizabeth Mecom Trust and/or Grandmother’s estate; and

2.
       When do you believe these matters will be resolved?

 

Daddy, we realize this is your decision, and we are not trying
to upset you with these questions.  However, we are all adults now with our own
financial responsibilities and it is very difficult to plan for the future when
we have these unresolved issues hanging over our heads. Specifically, we need
to know when we should plan to receive any distribution from the Trust and/or
the Estate. If there will be no distribution we should also know this so we can
plan accordingly. This question was prompted by your remark at the last family
meeting that you wanted to “pass this (the estate) on to us”.

 

Regardless of how this is resolved we all feel it would be healthy
to have a discussion with you just so that we can understand the situation.

 

Thanks for your understanding Daddy,

We disagree with Mecom’s contention that the
information conveyed at the meeting or the substance of the letter conclusively
demonstrate any alleged misconduct on Mecom’s part was apparent by December 16,
1998.  John did testify that, at the time of the meeting, he believed assets
existed that were not “in the trust’s possession” and he did not trust West and
was skeptical of his statements.  Katsy also testified that, at the time of the
meeting, she considered West’s explanation inconsistent with information
provided to appellants shortly after Mrs. Mecom’s death; i.e., they were
beneficiaries of the trust.  However, this testimony does not establish
appellants knew, as a result of the meeting, that Mecom had committed any
wrongdoing.  To the contrary, construing John’s testimony in context, he
actually suggested that West was motivated for his own gain to claim there were
no assets in the trust.  John opined that West used words such as “technically”
and “properly” to describe the alleged non-funding of the trust because he “was
trying to figure out how to take assets of the trust . . . and use them to his
benefit.”  John explained that West, as Mecom’s financial advisor, had a
“carried interest” in their joint business ventures and “for that reason it was
in his best interest to keep as many of the assets as possible on his side of
the table so he had more to play with.”  Although John’s explanation of his suspicions
was not exactly clear, neither he nor Katsy seemed to specifically testify they
knew, as a result of the meeting, that West misled them because Mecom
individually, or in collaboration with West, had mishandled or misappropriated
trust assets.

Although appellants expressed in the
subsequent letter to Mecom that they had not received complete information, the
letter does not reflect they were aware of any omission rising to the level of
a breach of fiduciary duty.  To the contrary, a reasonable inference is that
appellants believed disclosure would be forthcoming considering they were
requesting more information.  Although the tone of the letter indicates
appellants were delicately inquiring because Mecom is their father, appellants
did not accuse him of any misconduct or base their suggestion they might
receive no distribution on the fact that he may have wrongfully retained or
squandered trust assets.  The tenor of the entire letter reflects merely an
inquiry about the status of trust assets.

Moreover, John testified that Becknell had
been the long-time Mecom family attorney and personally represented John in
unrelated matters, John trusted and relied on Becknell, and when Becknell
advised appellants to write the letter, John knew Becknell also represented Mecom. 
The fact that appellants used Mecom’s attorney to assist them in requesting
information from Mecom supports a reasonable inference appellants did not yet
view the relationship with Mecom as adversarial concerning the trust; rather, they
wished to enlist Mecom’s cooperation to resolve the trust issues.

       In
the “Statement of Facts” portion of his motion for summary judgment, Mecom
suggested that appellants received no response to the letter yet failed to take
affirmative action to obtain distribution of trust assets until they filed suit
approximately ten years later.  We recognize that appellants’ testimony was
quite vague and non-committal regarding their attempts to learn more
information about the trust after sending the letter; they answered many
deposition questions by expressing a lack of memory regarding a particular
topic, especially dates on which they inquired about the trust.

            Nonetheless, John testified that, during this ten-year period,
he had casual conversations with Mecom, in which John generally referenced the
need to resolve the trust, but John did not make any accusations during these
conversations.  When asked what actions he took to ensure the assets were
distributed to the beneficiaries, John responded that he was a beneficiary, not
a trustee, and “what am I supposed to do? . . . I don’t know.”  Mary Elizabeth
could not recall specific conversations about the trust, but testified that
anytime appellants asked Becknell, he reassured them, “he’s working on it,”
although it is unclear whether “he” in this quote meant Becknell or Mecom. 
Katsy generally testified that, after writing the letter, she asked additional
questions and appellants were generally led to believe “these questions will be
answered.”  Katsy also indicated that she trusted her father to take care of
her and, as of the date of her deposition, still believed he would do so.  This
testimony collectively raises an inference that appellants reasonably depended
on Mecom, not only as trustee but also as their father, to provide further
information and believed it would be forthcoming.

            In their testimony collectively, appellants did indicate they
were made to feel greedy for asking about the trust, they felt intimidated and
uncomfortable “pushing” matters, the situation was “sensitive” considering the
trustee is their father, and they tried to obtain answers in a “roundabout”
manner because Mecom had delegated his duties to answer questions about the
trust to Becknell or West.  However, this reluctance to further inquire does
not conclusively establish appellants knew Mecom had committed any misconduct. 
Viewed in the light most favorable to appellants, this evidence also supports
an inference that they had a reasonable basis for failing to more firmly pursue
distribution of the assets and waiting for Mecom to resolve the trust issues.

            In sum, we recognize that the ten years between the letter and
the date appellants filed suit is a comparatively lengthy period.  Nevertheless,
as we have mentioned, Mecom bore the burden to negate application of the
discovery rule.  See KPMG Peat Marwick, 988 S.W.2d at 748.  Further,
appellants were relieved of the responsibility of diligent inquiry into Mecom’s
conduct unless “the fact of misconduct” became “apparent.”  See S.V.,
933 S.W.2d at 8.  In his motion, Mecom cited no evidence conclusively
demonstrating any misconduct was apparent to appellants during this period. 
Instead, the evidence raises an inference that appellants were still relying on
Mecom as fiduciary to explain disposition of the trust assets.  Consequently,
on the present record, Mecom has not proved appellants’ claim is barred by
limitations.  The evidence presents, at most, a fact issue for the jury
regarding the date on which appellants discovered their injuries.

      Accordingly, the trial court erred by granting traditional summary
judgment based on the statute of limitations relative to appellants’ claim for
breach of fiduciary duty.  We sustain their fourth issue.

IV.            
Conclusion

      We affirm the summary judgment on appellants’ conversion and
civil-theft claims but reverse the summary judgment on their claim for breach
of fiduciary duty and remand for further proceedings.

      

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

Panel consists of Justices
Seymore, Boyce, and Christopher.

 









[1] Another plaintiff below,
Kathleen Mecom Fogarty, does not appeal the judgment.  Thus, we do not address
the portion of the judgment disposing of her claims.





[2] We will refer to these
three children collectively as “appellants” except when necessary to refer to
an appellant separately.  Because their sibling, Kathleen Mecom Fogarty, has
not joined this appeal, we omit her from the background discussion.





[3] Mecom previously filed a
traditional motion followed by a separate no-evidence motion.  After further
discovery, Mecom filed his amended motion, which is the motion granted by the
trial court.





[4] In his amended motion for summary judgment, Mecom
cited the third element as “an injury to the plaintiff and benefit to
the defendant . . .” (emphasis added)—in the conjunctive; but the element is
actually “an injury to the plaintiff or benefit to the defendant . . .”
(emphasis added)—in the disjunctive.  See Priddy, 282 S.W.3d at
599. 

 





[5] Because Mecom failed to
negate application of the discovery rule, we need not consider appellants’
fraudulent-concealment defense to the limitations ground.